ESTATE OF CLYDE W. TURNER, SR., DECEASED, W. BARCLAY RUSHTON, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT *

Docket No. 18911–08.      Filed March 29, 2012.

P filed a motion for reconsideration of our Memorandum Opinion *Estate of Turner v. Commissioner*, T.C. Memo. 2011–209 (*Estate of Turner I*). In *Estate of Turner I* decedent (D) transferred property to a family limited partnership (FLP) in exchange for limited and general partnership interests. D transferred portions of the limited FLP interest as gifts during his lifetime. In *Estate of Turner I* we held that the inter vivos transfer of property to the FLP was subject to I.R.C. sec. 2036. Among other arguments, the estate contends that under D's will, the surviving spouse's right to the pecuniary marital bequest allows the surviving spouse to receive assets equal to the amount necessary to reduce the estate taxes to zero, and, because of the application of the marital deduction under I.R.C. sec. 2056, the estate has no estate tax deficiency. *Held*: D's estate is not entitled to claim the marital deduction with respect to the FLP interest or the assets

---

* This Opinion supplements our previously filed opinion *Estate of Turner v. Commissioner*, T.C. Memo. 2011–209.

306

> attributable to the FLP interest that D gave as gifts during his lifetime.

*Charles E. Hodges II*, for petitioner.
*Caroline R. Krivacka* and *Beth A. Nunnink*, for respondent.

### SUPPLEMENTAL OPINION

MARVEL, *Judge*: In a timely filed motion for reconsideration (motion) pursuant to Rule 161,[1] the Estate of Clyde W. Turner, Sr. (Clyde Sr.), requests the Court to reconsider its Memorandum Opinion *Estate of Turner v. Commissioner*, T.C. Memo. 2011–209 (*Estate of Turner I*).

In *Estate of Turner I* we held, among other things, that Clyde Sr.'s inter vivos transfer of property to Turner & Co. was subject to section 2036 and that the values of those transferred assets are included in the value of his gross estate. The estate requests that we reconsider and/or supplement our findings and opinion in connection with the application of section 2036. The estate also contends that the Court did not consider, and should decide, its alternative position—that even if section 2036 applies, the estate has no estate tax deficiency because it is entitled to an increased marital deduction equal to the increased value of the gross estate.[2] Respondent has filed an objection to the estate's motion.

Generally, reconsideration under Rule 161 is intended to correct substantial errors of fact or law and allow the introduction of newly discovered evidence that the moving party could not have introduced, by the exercise of due diligence, in the prior proceeding. *Estate of Quick v. Commissioner*, 110 T.C. 440, 441 (1998). This Court has discretion to grant a motion for reconsideration but will not do so unless the moving party shows unusual circumstances or substantial error. *Id.*; *see also Vaughn v. Commissioner*, 87 T.C. 164, 166–167 (1986). "Reconsideration is not the appropriate forum for rehashing previously rejected legal arguments or tendering new legal theories to reach the end result desired

---

[1] Unless otherwise indicated, Rule references are to the Tax Court Rules of Practice and Procedure, and section references are to the Internal Revenue Code (Code) in effect at relevant times.

[2] The estate originally raised this argument in posttrial briefs but we did not decide it, on the assumption that it was more appropriately resolved in the Rule 155 computation process. Because the parties do not agree regarding the issue and the issue must be resolved, we decide it in this Supplemental Opinion.

by the moving party." *Estate of Quick v. Commissioner*, 110 T.C. at 441–442.

I. *Application of Section 2036*

We adopt the findings of fact in *Estate of Turner I*. For convenience and clarity, we repeat the necessary facts below.

Clyde Sr. resided in Georgia when he died testate on February 4, 2004. *Estate of Turner I*, slip op. at 2. W. Barclay Rushton is the executor of the estate. *Id.* Mr. Rushton resided in Georgia when the petition on behalf of the estate was filed. *Id.*

In early 2002 Clyde Sr., his wife Jewell H. Turner (Jewell), and their two grandsons Marc and Travis Turner met with attorneys from the law firm of Stewart, Melvin & Frost. *Id.* at 7–8. On April 15, 2002, Clyde Sr. and Jewell established Turner & Co., a Georgia limited liability partnership. *Id.* at 8. The assets they contributed to the partnership consisted of cash, shares of common stock of Regions Bank, shares of other banks, certificates of deposit, and assets held in securities accounts, such as preferred stock and bonds. *Id.* at 9–10. The partnership agreement listed several purposes for creating Turner & Co., but the agreement was modeled on a standard form that Stewart, Melvin & Frost used when drafting partnership agreements. *Id.* at 11–12.

In 2002–04 Turner & Co. maintained investment accounts at the GMS Group, Morgan Keegan, and Wachovia Securities and a checking account at United Community Bank. The GMS and Wachovia account statements reflect no change in the securities held between December 2002 and Clyde Sr.'s death in February 2004. *Id.* at 19–20. The Morgan Keegan account statements reflect a handful of asset purchases and sales. *Id.* Turner & Co. made no trades in any of its investment accounts between October 2003, when Clyde Sr. became seriously ill, and his death. *Id.* at 20.

The estate contended that the Turners created Turner & Co. for at least one of the following legitimate and significant nontax reasons: (1) to consolidate their assets for management purposes and allow someone other than themselves or their children to maintain and manage the family's assets for future growth pursuant to a more active and formal investment management strategy, (2) to facilitate resolution of

family disputes through equal sharing of information, and (3) to protect the family assets and Jewell from Rory Crumley (Rory), the Turners' grandson with addiction problems, and Rory from himself. We concluded that the objective facts in the record failed to establish that there was a legitimate and significant nontax reason for formation of Turner & Co., that Clyde Sr. retained an interest in the transferred assets, and that the purpose of Turner & Co. was primarily testamentary. *See Estate of Turner I*, slip op. at 47–51. We also concluded that none of the assets contributed to Turner & Co. required active management or special protection, nor did Clyde Sr. have a distinct investment philosophy that he hoped to perpetuate. *Id.* at 38–39. We held that section 2036 includes the values of the transferred property in Clyde Sr.'s gross estate. *Id.* at 53.

The estate requests that we reconsider several findings of fact and our conclusion with respect to the application of section 2036. In the estate's view, once we do so, it becomes clear that the estate provided credible evidence to shift the burden of proof to respondent under section 7491(a) on the issue of whether Clyde Sr. had a legitimate and significant nontax purpose for the formation of Turner & Co. However, as we stated in *Estate of Turner I*, slip op. at 30, and as we observed in *Knudsen v. Commissioner*, 131 T.C. 185, 189 (2008), in a case where the standard of proof is the preponderance of the evidence and the preponderance of the evidence favors one party, we may decide the case on the weight of the evidence and not on an allocation of the burden of proof. We shall not reconsider our conclusion regarding the application of section 7491(a).

We now turn to the estate's contentions regarding the application of section 2036. First, the estate contends that our statement that "[w]e are particularly struck by the implausibility of petitioner's assertion that tax savings resulting from the family limited partnership were never discussed during a meeting" is an erroneous and unfair characterization of the estate's position and is contrary to stipulated facts. The estate relies on the testimony of Mr. Coyle, the Turners' attorney, who testified that the law firm presented the Turners with a tax planning option with allegedly superior tax benefits. However, the Turners' rejection of

another tax planning vehicle does not establish a nontax reason for the creation of Turner & Co.

The estate also mistakenly contends that respondent's lack of objection to certain of its proposed findings of fact creates binding stipulations that the Court must find as relevant facts. Although we have on occasion deemed the lack of objection to a proposed finding of fact to be a concession that it is correct except to the extent that it is clearly inconsistent with the opposing party's brief, *see Fankhanel v. Commissioner*, T.C. Memo. 1998–403, *aff'd without published opinion*, 205 F.3d 1333 (4th Cir. 2000); *Estate of Freeman v. Commissioner*, T.C. Memo. 1996–372, we find facts on the basis of the record as a whole, and we are not obligated to find facts that we do not consider relevant or necessary to our holdings. The estate has pointed to no instance where we found or failed to find facts inappropriately or erroneously.

Second, the estate asks us to take into account various other facts regarding the nontax purposes for the formation of Turner & Co., including the facts regarding Marc's role in handling his grandparents' finances and bookkeeping, the Turners' concern regarding management of their assets, disputes among family members, and the timing of the transfer of assets to Turner & Co. The estate has failed to demonstrate any unusual circumstances or substantial errors of fact or law that would justify reconsideration of our opinion and the findings of fact contained therein.

Third, the estate asks us to reconsider the holding that consolidated asset management generally is not a significant nontax purpose for forming a limited partnership except for assets requiring active management or special protection. As we discussed in *Estate of Turner I*, we previously have held that consolidated asset management may be a legitimate and significant nontax purpose. *Estate of Schutt v. Commissioner*, T.C. Memo. 2005–126; *see also Estate of Black v. Commissioner*, 133 T.C. 340, 371 (2009). However, consolidated asset management generally is not a significant nontax purpose where a family limited partnership is "'just a vehicle for changing the form of the investment in the assets, a mere asset container.'" *Estate of Turner I*, slip op. at 36 (quoting *Estate of Erickson v. Commissioner*, T.C. Memo. 2007–107). As we concluded in *Estate of Turner I*, there was no signifi-

cant nontax reason for the formation of Turner & Co. on the facts of this case, and we shall not reconsider our conclusion.

Fourth, the estate asks us to reconsider our statement that the Turners' concern regarding asset management "could have been readily addressed without transferring the assets to a family limited partnership." *Estate of Turner I*, slip op. at 41. The estate points out that "[t]o the extent some other potential alternative exists, taxpayers are free to choose between alternative structures as they see fit and not in a way that maximizes tax revenue." However, a taxpayer's freedom of choice is subject to various statutory and judicial limitations. For example, in the context of the bona fide sale exception to section 2036, one limitation is the existence of a legitimate and significant nontax reason for the creation of the partnership. As we held in *Estate of Turner I*, we are not persuaded on the basis of the record as a whole that such a purpose existed when Turner & Co. was formed.

We also reject the estate's invitation to reconsider our conclusion regarding the role that Turner & Co. allegedly had in protecting Rory from himself and Jewell from Rory. We fail to see how transferring assets to a limited partnership and then granting a portion of the limited partnership interest to a trust for the benefit of Rory provided any meaningful additional protection of family assets because Rory had no ownership interest in any of the assets before the creation of the partnership structure.

In *Estate of Turner I* we considered and addressed the estate's arguments, witnesses' testimony, and documentary evidence. The estate has not demonstrated any manifest error of fact. We will therefore deny the motion regarding the application of section 2036.

## II. *The Marital Deduction Issue*

The estate contends that even if section 2036 applies, the estate has no estate tax deficiency because Clyde Sr.'s will allows the estate to claim an increased marital deduction. We disagree.

The facts pertinent to our consideration of this issue are as follows. In 2002, upon the formation of Turner & Co., Clyde Sr. and Jewell each contributed assets with a fair market value of $4,333,671 (total value of $8,667,342) to Turner &

Co. In exchange, they each received a 0.5% general partnership interest and a 49.5% limited partnership interest. By January 1, 2003, Clyde Sr. transferred 21.7446% of his limited partnership interest in Turner & Co. as gifts to family members. On the date of his death, he owned a 0.5% general partnership interest and a 27.7554% limited partnership interest in Turner & Co. As we stated in *Estate of Turner I*, the parties appear to agree that Turner & Co.'s net asset value as of the date of Clyde Sr.'s death was $9,580,520.[3] Because of the discounts for lack of marketability and lack of control, the estate reported that the 0.5% general partnership interest had a value of $30,744 and that the 27.7554% limited partnership interest had a value of $1,578,240.

The estate reported that an 18.8525% limited partnership interest was allocated to the surviving spouse and an 8.9029% interest was allocated to a bypass trust.[4] Clyde Sr.'s estate claimed a marital deduction of $1,820,435, of which $1,072,000 pertained to the 18.8525% interest in Turner & Co. that passed to Jewell.

In *Estate of Turner I* we held that under section 2036 the assets that Clyde Sr. transferred to Turner & Co. must be included in his gross estate. *Estate of Turner I*, slip op. at 52–53. The estate contends that under Clyde Sr.'s will, the surviving spouse's right to the pecuniary marital bequest requires that the surviving spouse receive assets equal to the amount necessary to reduce estate taxes to zero. The marital deduction formula provision of Clyde Sr.'s will reads as follows:

If Jewell survives me and if there is a federal estate tax in effect at the time of my death, I give, devise and bequeath to her cash, securities or other property of my estate (undiminished by any estate, inheritance, succession, death or similar taxes) having a value equal to the maximum marital deduction as finally determined in my federal estate tax proceedings, less the aggregate amount of marital deductions, if any, allowed for such tax purposes by reason of property or interests in property passing or which have passed to my said wife otherwise than pursuant to the provisions of this Item; provided, however, the amount of this bequest shall be reduced by the amount, if any, needed to increase my taxable

---

[3] In his computation for entry of decision submitted to the Court after we filed *Estate of Turner I*, respondent calculated the deficiency using Turner & Co.'s net asset value of $9,488,714. Respondent states that for the Rule 155 computation he used the lower amount set forth in the notice of deficiency because that amount is to the estate's benefit.

[4] These findings of fact supplement our findings of fact in *Estate of Turner I*.

estate (for federal estate tax purposes) to the largest amount that, after allowing for the unified credit against the federal estate tax, and the state death tax credit against such tax * * *, will result in the smallest, if any, federal estate tax being imposed on my estate. The term "maximum marital deduction" shall not be construed as a direction by me to exercise any election respecting the deduction of estate administration expenses, the determination of the estate tax valuation date, or any other tax election which may be available under any tax laws, only in such manner as will result in a larger allowable estate tax marital deduction than if the contrary election had been made. My Executor shall have the sole discretion to select the assets which shall constitute this bequest. In no event, however, shall there be included in this bequest any asset or the proceeds of any asset which will not qualify for the federal estate tax marital deduction, and this bequest shall be reduced to the extent that it cannot be created with such qualifying assets. My Executor shall value any asset selected by my Executor for distribution in kind as a part of this bequest at the value of such asset at the date of distribution of such asset.

Respondent disagrees that the will provision allows the estate to claim an increased marital deduction.

Generally, applying section 2036 in the context of a family limited partnership raises a twofold problem for the marital deduction calculation. The first problem (which is not at issue in this case) arises because appraisals of partnership interests use various discounts, such as discounts for lack of marketability and lack of control. When section 2036 applies, it pulls undiscounted assets that the decedent transferred to the partnership into the gross estate. The estate, however, claims on the return the marital deduction using a discounted value of the partnership interest pertaining to those assets, to the extent the partnership interest passes to the surviving spouse. In some cases the Internal Revenue Service has taken the position that even when section 2036(a) applies, the marital deduction is measured by the value of what actually passes to the surviving spouse, which is a discounted partnership interest, and not by the value of the underlying assets. *Estate of Black v. Commissioner*, 133 T.C. 340, 342 (2009); *Estate of Shurtz v. Commissioner*, T.C. Memo. 2010–21. This produces a mismatch between values for the gross estate inclusion and the marital deduction calculation.[5] However, this type of mismatch is not present in

[5] We faced a problem of a mismatch between the values of assets for the purpose of inclusion in the gross estate and for the purpose of calculating the marital deduction in *Estate of Black v. Commissioner*, 133 T.C. 340, 342 (2009), and *Estate of Shurtz v. Commissioner*, T.C. Memo.

Continued

this case: respondent allowed an increased marital deduction that he calculated on the basis of the value of assets transferred in exchange for the partnership interests that Clyde Sr. held at death, rather than on the basis of the discounted values of the general and limited partnership interests that Clyde Sr. owned at death, to the extent that they passed to Jewell. The estate recognizes that, and we leave this mismatch problem for another day.

The second type of problem caused by the application of section 2036 arises when a decedent transfers a portion of the partnership interest during his lifetime as a gift to someone other than the spouse. On the estate tax return the estate claims a marital deduction for the partnership interest that passes to the surviving spouse, but section 2036 pulls assets underlying the partnership interest into the gross estate, including assets pertaining to the transferred partnership interest. Although under section 2036 assets underlying the partnership interest transferred as a gift are included in the gross estate, neither those assets nor the corresponding partnership interest passes to the surviving spouse.

This type of mismatch is at issue in this case. In *Estate of Turner I* we concluded that section 2036 applied to the transfer of assets to the limited partnership, and section 2036 caused the inclusion of the assets transferred to the partnership in Clyde Sr.'s gross estate. A portion of those assets includes assets underlying the 21.7446% partnership interest that Clyde Sr. transferred as a gift. Because Clyde Sr. no longer owned the 21.7446% limited partnership interest at his death, our holding that section 2036 requires the inclusion of the underlying assets in his estate means that the gross estate includes assets that Clyde Sr. had

---

2010–21. For example, in *Estate of Black v. Commissioner*, 133 T.C. at 342, we stated that if the fair market value of the stock that the decedent contributed to the partnership, rather than the fair market value of the decedent's interest in the partnership, was includable in his gross estate under sec. 2036, we had to decide "whether the marital deduction to which Mr. Black's estate is entitled under section 2056 should be computed according to the value of the partnership interest that actually passed to Mrs. Black or according to the value of the underlying stock apportionable to that interest". *See also Estate of Shurtz v. Commissioner*, T.C. Memo. 2010–21. However, in those cases we held that sec. 2036(a) did not apply because the transfers of assets to the family limited partnerships met the bona fide sale exception. *See Estate of Black v. Commissioner*, 133 T.C. at 375; *Estate of Shurtz v. Commissioner*, T.C. Memo. 2010–21. Accordingly, the issue became moot, and the estates computed the marital deductions according to the value of the partnership interests that actually passed to the surviving spouses. *See Estate of Black v. Commissioner*, 133 T.C. at 375; *Estate of Shurtz v. Commissioner*, T.C. Memo. 2010–21.

already transferred before his death.[6] On the marital deduction side, however, the estate claimed on the return the discounted value of the partnership interest that passed to the surviving spouse. Respondent contends that the estate may not claim a marital deduction for the assets or the partnership interest that Clyde Sr. transferred as gifts during his lifetime.

The estate, however, contends that under the formula marital deduction clause of the will quoted above, *see supra* pp. 312–313, the estate may recalculate the marital deduction and claim the marital deduction for the assets underlying the 21.7446% partnership interest. The estate argues that even if section 2036 applies, the will requires the estate to increase the value of the marital gift. In the estate's view, section 2036 applies a legal fiction for purposes of calculating the gross estate, and, for consistency, the marital deduction can also be increased to reflect that fiction. The estate argues that it would be inconsistent to conclude that Clyde Sr. retained a right to possess or enjoy assets he contributed to the partnership and at the same time ignore the values of those assets included in the gross estate under section 2036 in calculating the marital deduction.[7]

Respondent disagrees that the Code allows the estate to increase the marital deduction in that manner. He determined that "[t]he taxable items are the portion of Turner & Co., LP which was gifted, as it does not go to the spouse". Respondent contends that Clyde Sr. no longer owned the assets underlying the transferred partnership interest or the partnership interest itself and therefore he could not pass either to Jewell. Respondent contends that although section 2036 pulls the assets into the estate, the assets do not qualify for the marital deduction. We must decide whether the estate may apply the marital deduction formula provision to increase the amount of the marital deduction for the

---

[6] In the notice of deficiency respondent increased Clyde Sr.'s taxable estate by the net asset value of the property transferred to Turner & Co. but made a corresponding reduction to the adjusted taxable gifts.

[7] In the opening brief, the estate also claims that the marital deduction would not be reduced by the amount of the Federal estate tax liability because Clyde Sr.'s will requires that the marital gift be undiminished by the estate tax. The estate did not raise this aspect of the calculations in the motion, and we understand the estate either to have abandoned the argument or to have adopted respondent's suggestion in the reply brief that any dispute on this point be resolved in the context of the Rule 155 computation.

assets that are part of the gross estate yet do not actually pass to the surviving spouse.

We turn to the relevant Code sections. Generally, an estate may deduct from the value of the gross estate the value of property "which passes or has passed from the decedent to his surviving spouse". *See* sec. 2056(a); sec. 20.2056(a)–1(a), Estate Tax Regs. The value of the interest must be includable in the decedent's gross estate. Sec. 2056(a). Respondent relies on section 2056(a) and interprets it as limiting the deduction to the value of the property actually passing to the surviving spouse.

The statutory definition of the term "passing" is found in section 2056(c) and is very broad. Section 2056(c) provides that "[f]or purposes of this section, an interest in property shall be considered as passing from the decedent" to any person if he or she receives it by will, intestate succession, dower or elective share, right of survivorship, transfer by the decedent at any time, the exercise (or in default on nonexercise) of a power of appointment, or pursuant to a life insurance beneficiary designation. *See also* sec. 20.2056(c)–1, Estate Tax Regs. Under the regulations, "[a] property interest is considered as passing to the surviving spouse *only if it passes to the spouse as beneficial owner*".[8] Sec. 20.2056(c)–2(a), Estate Tax Regs. (emphasis added). Neither the partnership interest that Clyde Sr. transferred by gift nor the underlying assets passed or could pass to Jewell as a beneficial owner, and under section 20.2056(c)–2(a), Estate Tax Regs., such property interests are not considered as passing to the surviving spouse. Accordingly, under section 2056(a) the estate may not deduct from the value of the gross estate an amount equal to the value of either the transferred partnership interest or the underlying assets.

The structure of the applicable regulations, *see* secs. 20.2056(c)–1, 20.2056(c)–2, and 20.2056(c)–3, Estate Tax Regs., supports our conclusion. Section 20.2056(c)–1, Estate Tax Regs., contains general rules for determining the person to whom any property interest "passed from the decedent". Section 20.2056(c)–2, Estate Tax Regs., defines the phrase "passed from the decedent to his surviving spouse", as discussed above. Section 20.2056(c)–3, Estate Tax Regs., defines

---

[8] The regulations contain a number of exceptions not relevant in this case.

the phrase "passed from the decedent to a person other than his surviving spouse" as any property interest which, under the definition of section 20.2056(c)–1, Estate Tax Regs., is considered as having "passed from the decedent" and which under the rules of section 20.2056(c)–2, Estate Tax Regs., is not considered as having "passed from the decedent to his surviving spouse". Section 20.2056(c)–3, Estate Tax Regs., also provides that "[i]t is immaterial whether the property interest which passed from the decedent to a person other than his surviving spouse is included in the decedent's gross estate." These regulations read as a whole suggest that irrespective of whether property is included in the decedent's gross estate, property that passed to a person other than a surviving spouse cannot also be considered as passing to the surviving spouse. Because Clyde Sr. transferred the underlying assets to the partnership and then transferred the portions of the limited partnership interest as gifts during his lifetime, any property interest in either the partnership interest transferred to persons other than Jewell or the assets underlying that interest could not and did not pass to Jewell for purposes of section 2056. Therefore, the estate may not recalculate the marital deduction to include the transferred partnership interest or the underlying assets.

In reaching our conclusion, we also take into account the place of the marital deduction in the overall structure of the wealth transfer system. Generally, section 2001(a) imposes a tax "on the transfer of the taxable estate of every decedent who is a citizen or resident of the United States." Section 2051 defines the taxable estate as "the value of the gross estate" less applicable deductions. The marital deduction under section 2056 is one such applicable deduction. The policy behind the marital deduction rule is that property passes untaxed from the first spouse to die to his or her surviving spouse but then is included in the estate of the surviving spouse. *Estate of Letts v. Commissioner*, 109 T.C. 290, 295 (1997), *aff'd without published opinion*, 212 F.3d 600 (11th Cir. 2000). The marital deduction therefore does not eliminate or reduce the tax on the transfer of marital assets out of the marital unit but permits deferral until the death of or gift by the surviving spouse.

As follows from the foregoing, allowing a marital deduction with respect to an asset to the estate of the first spouse to

die presupposes that the surviving spouse, if she does not consume the asset, would include it in the transfer tax base (subject to applicable exemptions), either when she makes a gift of the property during her lifetime or upon her death. *Cf.* secs. 2033, 2511; *Estate of Letts v. Commissioner*, 109 T.C. at 295. Accordingly, if Clyde Sr.'s estate claims a marital deduction for the partnership interest Clyde Sr. gave as gifts during his lifetime or the underlying assets, the marital deduction presupposes that Jewell would include values of the transferred partnership interest or the underlying assets in the gift tax base if she gives them as gifts or her estate would have to include them in her gross estate upon her death.[9] Jewell could not consume the assets attributable to the partnership interest that Clyde Sr. transferred as gifts because she never owned them. She also could not transfer it as gifts because the partnership interest Clyde Sr. transferred as gifts did not pass to her as "beneficial owner". *See* sec. 20.2056(c)–2(a), Estate Tax Regs. Lastly, Jewell would not include the partnership interest that Clyde Sr. had transferred as gifts during his lifetime or the assets attributable to it in her gross estate because none of the Code provisions would require her to do so. The general inclusion section, section 2033, provides: "The value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death." Sections 2034 through 2045 require the inclusion of several narrowly defined classes of assets, none of which would apply to the assets we are considering. Allowing a marital deduction for the transferred partnership interest or the assets would allow them to leave the marital unit without a transfer tax either at the death of the first spouse or upon the transfer by gift or at the death of the second spouse.

The rationality of the estate and gift tax regimes regarding the marital deduction is also illustrated in sections 2056(b)(7), 2044, and 2519. Section 2056(b)(7) provides an exception to the general rule that a marital deduction is not allowed for terminable interest property passing from a

_____

[9] After Clyde Sr.'s death, on September 18, 2006, Jewell authorized the establishment of four separate partnerships: one for each of her surviving children and one for Trey and Rory. Jewell was a limited partner and a general partner in each partnership. Turner & Co. was dissolved effective January 8, 2009.

decedent to his or her surviving spouse. [10] *See* sec. 2056(b). Section 2056(b)(7) provides an exception to the terminable interest rule for qualified terminable interest property (QTIP). It allows a marital deduction for QTIP to the estate of the first spouse to die although the surviving spouse receives only an income interest and not the remainder and has no control over the disposition of the remainder.

After the death of the surviving spouse, section 2044 requires that the value of his or her gross estate include the value of QTIP. Section 2519 is similar to section 2044, but it addresses lifetime transfers of QTIP by the surviving spouse. [11] But for these sections, the QTIP remainder, never actually owned by the surviving spouse, would not be included in a transfer tax base by the surviving spouse or her estate. Sections 2044 and 2519 therefore ensure that taxation of the transfer of the QTIP remains consistent with the basic policy of the marital deduction, namely that either gift tax or estate tax applies (subject to the applicable exemptions) when the property leaves the marital unit.

If we were to accept the estate's position, Jewell's estate would not be required to include in the gross estate the values of assets that Jewell did not actually own but with respect to which a marital deduction was allowed to Clyde Sr.'s estate. There is no Code provision similar to sections 2044 and 2519 that would require adding such assets into her transfer tax base. The lack of such a provision would allow the assets to leave Clyde Sr. and Jewell's marital unit without being taxed, thereby frustrating the purpose and the policy underlying the marital deduction. Although the formula of Clyde Sr.'s will directs what assets should pass to the surviving spouse, the assets attributable to the transferred partnership interest or the partnership interest itself are not available to fund the marital bequest; their disposition to the donees occurred during Clyde Sr.'s lifetime but is

---

[10] A terminable interest is an interest passing from a decedent to his or her surviving spouse that will end on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur. Sec. 2056(b)(1). The terminable interest rule denies a marital deduction if: (1) an interest passing to the surviving spouse is a terminable interest, (2) an interest in such property passes from the decedent to someone other than his or her surviving spouse for less than full and adequate consideration, and (3) the third person will possess or enjoy the property after the termination or failure of the interest passing to the surviving spouse. *Id.*

[11] The estate of the surviving spouse or the surviving spouse, as applicable, may recover the applicable transfer tax from QTIP recipients. *See* sec. 2207A(a).

deemed delayed until Clyde Sr.'s death by our holding that section 2036 applies. Because the property in question did not pass to Jewell as beneficial owner, we reject the estate's position and hold that the estate may not rely on the formula of Clyde Sr.'s will to increase the marital deduction.

Because we did not address the marital deduction issue in *Estate of Turner I*, we supplement *Estate of Turner I* consistent with the foregoing. We have considered the remaining arguments of both parties for results contrary to those expressed herein and, to the extent not discussed above, find those arguments to be irrelevant, moot, or without merit.

For the above reasons,

*An appropriate order will be issued.*