T.C. Summary Opinion 2017-1

UNITED STATES TAX COURT

MAHMOUD A. MAKHLOUF AND JANE M. MAKHLOUF, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5796-15S.                    Filed January 11, 2017.

Mahmoud A. Makhlouf and Jane M. Makhlouf, pro sese.

Janet F. Appel and Derek W. Kelley, for respondent.

SUMMARY OPINION

LAUBER, Judge:  This case was heard pursuant to the provisions of section

7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Under

_____

[1]All statutory references are to the Internal Revenue Code (Code) in effect
for the year in issue, and all Rule references are to the Tax Court Rules of Practice
and Procedure.  We round all monetary amounts to the nearest dollar.

section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

With respect to petitioners' Federal income tax for 2010, the Internal Revenue Service (IRS or respondent) determined a deficiency of $12,687. The sole issue for decision is whether petitioners are entitled to deduct a rental real estate loss. The resolution of that issue depends on whether petitioners qualify as real estate professionals. We find that the answer to this question is "no," and we will accordingly sustain the determined deficiency.

## Background

The parties filed a stipulation of facts with accompanying exhibits that is incorporated by this reference. Petitioners resided in Massachusetts when they petitioned this Court.

Petitioners' primary residence, which they have owned for 40 years, is in Weston, Massachusetts (Weston property). On July 1, 2009, they moved to a vacation house they owned in Chatham, Massachusetts (Chatham property), and began renting out the Weston property. They executed two successive one-year leases, running from July 1, 2009, to June 30, 2011, by which they rented the Weston property to the same tenants. Petitioners moved back to the Weston property in 2012.

During 2010 Mr. Makhlouf was one of 18 owners of two apartment buildings in Cairo, Egypt (Dokki property). The other 17 owners were members of Mr. Makhlouf's family. Petitioners visited Egypt twice in 2010, from January 1 to February 21 and from December 9 to December 31. During both visits they stayed in an apartment in the Dokki property. Mr. Makhlouf testified that he held a 20% interest in the Dokki property and received a ratable portion of the rent from it during 2010.

Petitioners were retired during 2010 but alleged that they engaged in extensive management activities with respect to the Weston and the Dokki properties. Their activities relating to the Weston property consisted primarily of arranging for and supervising contractors; the matters these contractors addressed included insect infestation, plumbing problems with the sprinkler system, and replacement of a dishwasher. Petitioners performed little direct labor themselves although on one occasion they made curtains at the tenants' request. Petitioners spent no time looking for new tenants during 2010 because the existing tenants had renewed their lease through June 2011.

Petitioners' activities relating to the Dokki property during 2010 consisted primarily of meetings with family members during their two trips to Egypt. At these meetings petitioners discussed legal, business, and investment matters con-

cerning the family's real estate holdings generally. Petitioners alleged that they devoted additional hours to the Dokki property while in Massachusetts by reading documents and sending emails.

To substantiate the hours they devoted to their rental real estate activity, petitioners prepared and provided to the IRS two documents: "Real Estate Professional Hours for 2010 for Mahmoud and Jane Makhlouf" (Weston spreadsheet) and "2010 material participation hours for the Dokki Property" (Dokki spreadsheet). Both documents were created after 2010, allegedly on the basis of computer entries and a diary that Mrs. Makhlouf kept. The diary of their trips to Egypt showed substantial amounts of time devoted to personal activities, including touring the pyramids and visiting Luxor.

On the Weston spreadsheet petitioners reported 792 hours attributable to Mr. Makhlouf's activities and 806 hours attributable to Mrs. Makhlouf's activities. This time included 129 hours traveling between the Weston and the Chatham properties, which were roughly 120 miles apart; 64 hours paying bills; and 685 hours performing other tasks. On the Dokki spreadsheet petitioners reported 353 hours attributable to Mr. Makhlouf's activities and 253 hours attributable to Mrs. Makhlouf's activities. This time included 88 hours traveling from Massachusetts to Cairo and 518 hours performing other tasks (mostly attending family meetings).

For 2010 petitioners timely filed Form 1040, U.S. Individual Income Tax Return. They included in this return a Schedule E, Supplemental Income and Loss, which listed the Weston and the Dokki properties. For the Weston property petitioners reported rental income of $74,850 and total expenses of $149,036, for a net loss of $74,186. For the Dokki property petitioners reported rental income of $8,000 and expenses of $4,000, for a net profit of $4,000.

The IRS selected petitioners' 2010 return for examination. It concluded that they had actively participated in a rental real estate activity and allowed a deduction for $15,106 of their reported Schedule E loss under section 469(i).[2] The IRS disallowed the balance of the loss deduction as a nondeductible passive loss on the ground that petitioners were not engaged in a "real property business" within the meaning of section 469(c)(7). The IRS issued petitioners a timely notice of deficiency, and they timely petitioned this Court.

---

[2]Section 469(i) allows an individual who actively participates in a rental real estate activity to deduct against ordinary income up to $25,000 of losses from that activity if his adjusted gross income (AGI) is less than $150,000. Sec. 469(i)(1) and (2). Section 469(i)(3) requires a gradual phase-out of this deduction once AGI exceeds $100,000. The IRS found that petitioners' AGI for 2010 was $119,789 so that their loss deduction was partially phased out.

## Discussion

The IRS' determinations in a notice of deficiency are generally presumed correct. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1993). Deductions are a matter of legislative grace; the taxpayer bears the burden of proving his entitlement to deductions allowed by the Code and of substantiating the amounts underlying claimed deductions. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); sec. 1.6001-1(a), Income Tax Regs. Because we decide this case on a preponderance of the evidence, we need not decide which party has the burden of proof. See sec. 7491(a); Estate of Turner v. Commissioner, 138 T.C. 306, 309 (2012).

Petitioners for 2010 claimed a rental real estate loss deduction of $70,186. Section 469(a) generally disallows a current deduction for a "passive activity loss" incurred by an individual. Section 469(c) defines "passive activity" to include an activity involving a trade or business in which the taxpayer does not "materially participate" and "any rental activity" regardless of whether the taxpayer materially participates. Sec. 469(c)(1), (2), (4).

With regard to the disallowed portion of their loss deduction, petitioners urge that during 2010 they were real estate professionals, i.e., taxpayers in a "real property business" within the meaning of section 469(c)(7). That section provides

that the rental real estate activity of a real estate professional is not per se passive. See Kosonen v. Commissioner, T.C. Memo. 2000-107, 79 T.C.M. (CCH) 1765; sec. 1.469-9(b)(6), (c)(1), Income Tax Regs. If a real estate professional materially participates in a rental real estate activity, that activity is treated as nonpassive and the section 469(a) disallowance does not apply. See Shiekh v. Commissioner, T.C. Memo. 2010-126; Fowler v. Commissioner, T.C. Memo. 2002-223; sec. 1.469-9(e)(1), Income Tax Regs.

To qualify as a real estate professional, a taxpayer must (among other things) "perform[] more than 750 hours of services during the taxable year in real property trades or businesses in which * * * [he] materially participates." Sec. 469(c)(7)(B)(ii). For taxpayers filing a joint return, only one spouse need qualify under this rule. Sec. 469(c)(7)(B). If a taxpayer is married, participation by the taxpayer's spouse counts as participation by the taxpayer, sec. 1.469-5T(f)(3), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988), but only for the purpose of satisfying the material participation requirement, Oderio v. Commissioner, T.C. Memo. 2014-39, at *2; sec. 1.469-9(c)(4), Income Tax Regs. A spouse's participation is not attributed for the purpose of satisfying the 750 hours requirement. Oderio, at *2.

The focus of the parties' dispute is whether either petitioner during 2010 performed more than 750 hours of services in a real property trade or business in which he or she materially participated.[3] A taxpayer may substantiate the required 750 hours of participation by any reasonable means, but a mere "ballpark guesstimate" will not suffice. Moss v. Commissioner, 135 T.C. 365, 369 (2010); sec. 1.469-5T(f)(4), Temporary Income Tax Regs., supra. In the absence of "[c]ontemporaneous daily time reports, logs, or similar documents," the extent of participation may be established by "the identification of services performed over a period of time and the approximate number of hours spent performing such services during such period, based on appointment books, calendars, or narrative summaries." Sec. 1.469-5T(f)(4), Temporary Income Tax Regs., supra. The credibility of a taxpayer's records is diminished if the number of hours reported appears excessive in relation to the tasks described. Hill v. Commissioner, T.C. Memo. 2010-200, aff'd, 436 F. App'x 410 (5th Cir. 2011).

---

[3]Where multiple rental properties are involved, "material participation" is assessed separately with respect to each property unless the taxpayer has elected to treat all of the properties as a single activity. Sec. 469(c)(7)(A); Aragona Tr. v. Commissioner, 142 T.C. 165, 181 n.17 (2014). Given our disposition, we need not decide whether petitioners properly made this election or (if they failed to do so) whether they could qualify for relief under Rev. Proc. 2010-13, 2010-4 I.R.B. 329.

A.  Weston Property

Petitioners testified that the Weston spreadsheet was created using information that Mrs. Makhlouf had maintained contemporaneously in a diary and that these data were later entered into a computer program. We did not find this testimony credible. Mrs. Makhlouf's diary contains very few entries apart from noting days on which petitioners traveled between the Weston and the Chatham properties. Her diary does not show the start and end times for particular tasks or the total numbers of hours worked on any day.

The Weston spreadsheet was not prepared contemporaneously, and it is implausible on its face in many respects. Petitioners allegedly paid bills on 26 separate occasions, and each bill paying exercise supposedly lasted at least one hour and often longer. It is implausible that petitioners spent a total of 64 hours paying bills for a single rental property. They allegedly devoted 105 hours during October through December 2010 to "work on taxes for 2010." They offered no credible explanation why they would have devoted 105 hours to such tasks before the 2010 tax year ended or why they would each have spent the same number of hours reading IRS instructions and completing tax forms.

For most entries on the spreadsheet each petitioner supposedly devoted the exact same number of hours to the task in question. Petitioners allegedly attended

every meeting with contractors together and spent precisely the same amount of time at each meeting. Petitioners allegedly double-teamed tasks that could easily have been performed by one person, such as "supervise yard work" and "prepare and mail final 2009 tax package."

Most entries on the Weston spreadsheet are round-number estimates; many are clearly inflated, and many are duplicative. Each petitioner allegedly spent 102 hours reading or writing emails relating to the Weston property, for a total of 204 hours, and each such exercise supposedly lasted 30 minutes. Each petitioner allegedly spent 36 hours, for a total of 72 hours, meeting with an insurance agent about a change to their homeowners insurance policy. The first half of the Weston spreadsheet shows chronological time entries through December 9, and the second half shows time spent on specific projects; many entries in the second half duplicate entries in the first half. All of the time entries are round numbers, and none shows specific start and stop times for the work petitioners supposedly performed.

We conclude that the hours shown on the Weston spreadsheet are inflated, duplicative, and implausible on their face. Few if any entries are supported by contemporaneous record-keeping. If any probative value were attached to this document, we would find that it would support the conclusion that petitioners

together spent at most 200 hours on tasks relating to management of the Weston property.

B.    Dokki Property

The Dokki spreadsheet was not prepared contemporaneously, and it also lacks plausibility.  Petitioners spent 73 days in Egypt during 2010, visiting Mr. Makhlouf's family and enjoying a change from the Massachusetts winter.  If we ignore their 88 hours of travel time, the spreadsheet reports that Mr. and Mrs. Makhlouf devoted 309 hours and 209 hours, respectively, to the Dokki property. But the evidence does not show the extent to which Mr. Makhlouf's meetings with family members concerned his specific investment in the Dokki property as opposed to general business and investment matters.  We do not believe that he devoted on average more than four hours each day, seven days a week, to a real estate property that yielded him only $8,000 in rental income, while also visiting family, touring the pyramids and Luxor, and otherwise enjoying a vacation.  And we do not believe that Mrs. Makhlouf spent 210 hours attending business meetings with her husband's family when she had no apparent interest in that business.

Many entries in the Dokki spreadsheet are in Arabic and have not been translated.  The hours listed for family meetings are clearly inflated; numerous entries report improbable all-day meetings, and some of the entries are contra-

dicted by entries in Mrs. Makhlouf's diary. If any probative value were attached to the Dokki spreadsheet, we would find that it would support the conclusion that petitioners together spent at most 100 hours on tasks relating to management of the Dokki property. Because those hours, added to the 200 hours that might be gleaned from the Weston spreadsheet, come well short of the 750 hours required, we find that petitioners were not real estate professionals during 2010, and we will accordingly sustain respondent's disallowance of their $55,080 rental real estate loss deduction.

     To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.