AHG Investments, LLC, Alan Ginsburg, a Partner Other Than the Tax Matters Partner, Petitioner *v.* Commissioner of Internal Revenue, Respondent

Docket No. 3745–09.                Filed March 14, 2013.

R issued a notice of final partnership administrative adjustment (FPAA) determining adjustments to income on multiple grounds. The FPAA also determined an I.R.C. sec. 6662 40% gross valuation misstatement penalty, as well as other penalties. P conceded the adjustments to income on grounds other than valuation or basis in an attempt to avoid the gross valuation misstatement penalty and filed a motion for partial summary judgment that this penalty does not apply as a matter of law. *Held*: A taxpayer may not avoid application of the gross valuation misstatement penalty merely by conceding on grounds unrelated to valuation or basis. We will deny P's motion for partial summary judgment.

*Thomas A. Cullinan*, for petitioner.
*George W. Bezold*, for respondent.

OPINION

GOEKE, *Judge*: This case is before the Court on petitioner's motion for partial summary judgment filed pursuant to Rule 121,[1] to which respondent objects. Respondent issued a notice of final partnership administrative adjustment (FPAA) to petitioner, a partner other than the tax matters partner (TMP) of AHG Investments, LLC (AHG Investments). The major adjustment in the FPAA was to disallow $10,069,505 in losses allocated to petitioner for taxable years 2001 and 2002. Petitioner conceded on grounds other than valuation or basis that the FPAA adjustments were correct in an attempt to avoid application of the 40% gross valuation misstatement penalty and has filed a motion for partial summary judgment that this penalty does not apply as a matter of law. For the reasons stated herein, we will deny petitioner's motion.

---

[1] Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code in effect for the years in issue.

73

*Background*

The relevant facts are not in dispute. During the years at issue petitioner was a partner other than the TMP of AHG Investments. At the time the petition was filed he resided in Florida. Also during the years at issue AHG Investments' TMP was Helios Trading, LLC. At the time the petition was filed the mailing address for Helios Trading, LLC, was in Illinois. It was not established where AHG Investments' principal place of business was or whether AHG Investments had been dissolved at the time the petition was filed.

Respondent's FPAA enumerated 14 alternative grounds in support of the adjustments and asserted 40% accuracy-related penalties under section 6662 for the portions of the underpayments of tax resulting from adjustments of partnership items attributable to a gross valuation misstatement.[2] In the petition, petitioner conceded the FPAA adjustments were correct on the ground that petitioner was not at risk under section 465 and thus was not entitled to deduct certain attributed losses. In an amendment to the petition, petitioner also conceded that the FPAA adjustments were correct on the ground that the transaction at issue did not have substantial economic effect under section 1.704–1(b), Income Tax Regs. Both section 465 and section 1.704–1(b), Income Tax Regs., were among the grounds on which respondent supported the adjustments made in the FPAA.

Petitioner filed a motion for partial summary judgment regarding the 40% gross valuation misstatement penalty, arguing that this penalty does not apply as a matter of law because petitioner conceded the correctness of adjustments proposed in the FPAA on grounds unrelated to valuation or basis. Respondent contests petitioner's motion for partial summary judgment.

---

[2] Respondent also determined 20% accuracy-related penalties applied to the portion of each underpayment resulting from adjustments of partnership items attributable to negligence or disregard of rules or regulations, a substantial understatement of income tax, or a substantial valuation misstatement.

*Discussion*

I. *Summary Judgment*

Rule 121(a) provides that either party may move for summary judgment upon all or any part of the legal issues in controversy. Full or partial summary judgment may be granted only if it is demonstrated that no genuine dispute exists as to any material fact and that the issues presented by the motion may be decided as a matter of law. *See* Rule 121(b); *Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). We conclude that there is no genuine dispute as to any material fact and that a decision may be rendered as a matter of law.

II. *Gross Valuation Misstatement Penalty*

Under section 6662(h), a taxpayer may be liable for a 40% penalty on any portion of an underpayment of tax attributable to a gross valuation misstatement. A gross valuation misstatement exists if the value or adjusted basis of any property claimed on a tax return is 400% or more of the amount determined to be the correct amount of such value or adjusted basis. Sec. 6662(h)(2)(A). Whether there is a gross valuation misstatement in the partnership context is determined at the partnership level. Sec. 1.6662–5(h)(1), Income Tax Regs.

We have previously held that when the Commissioner asserts a ground unrelated to value or basis of property for totally disallowing a deduction or credit and a taxpayer concedes the deduction or credit on that ground, any underpayment resulting from the concession is not attributable to a gross valuation misstatement.[3] *Bergmann v. Commissioner*, 137 T.C. 136, 145 (2011) (citing *McCrary v. Commissioner*, 92 T.C. 827, 851–856 (1989)). Today we depart from this holding, instead ruling that a taxpayer may not avoid the gross valuation misstatement penalty merely by con-

---

[3] In addition, we have extended that holding to situations where the taxpayer does not state the specific ground upon which the concession of the deduction or credit is based so long as the Commissioner has asserted some ground other than value or basis for totally disallowing the relevant deduction or credit. *Bergmann v. Commissioner*, 137 T.C. 136, 145 (2011) (citing *Rogers v. Commissioner*, T.C. Memo. 1990–619, and *Schachter v. Commissioner*, T.C. Memo. 1994–273).

ceding a deduction or credit on a ground unrelated to value or basis of property.

## A. *McCrary and Todd Cases*

In *McCrary v. Commissioner*, 92 T.C. 827 (1989), the taxpayers entered into a purported lease of a master recording and claimed resulting investment tax credits. Before trial they conceded that they were not entitled to the claimed investment tax credit because the agreement was not a lease. They did not contest the fair market value of the master recording at trial, although other issues were addressed. We held that the gross valuation misstatement penalty was inapplicable as a result of their concession. In disagreeing with the Commissioner's argument that a taxpayer cannot selectively concede a ground for disallowance in order to avoid an addition to tax, we relied on the logic of a prior Tax Court case, *Todd v. Commissioner*, 89 T.C. 912 (1987) (*Todd I*), *aff'd*, 862 F.2d 540 (5th Cir. 1988) (*Todd II*). We also extensively discussed and relied upon the Court of Appeals for the Fifth Circuit's affirmation of *Todd I* in *Todd II*.

The facts in *Todd I* were similar to those in *McCrary*; however, the taxpayers in *Todd I* did not make a concession on a ground other than valuation or basis as in *McCrary*.[4] Rather, in *Todd I* we had already disallowed claimed deductions and credits on a ground other than valuation or basis after a trial. *Noonan v. Commissioner*, T.C. Memo. 1986–449, *aff'd without published opinion sub nom. Hillendahl v. Commissioner*, 976 F.2d 737 (9th Cir. 2012).

In analyzing the gross valuation misstatement penalty statute (section 6659 at the time), the Court of Appeals for the Fifth Circuit in *Todd II* stated that "Unfortunately, none of the formal legislative history provides a method for calculating whether a given tax underpayment is attributable to a valuation overstatement." *Todd II*, 862 F.2d at 542. The Court of Appeals proceeded to adopt the same formula we applied in *Todd I*, stating:

---

[4] In *Todd v. Commissioner*, 89 T.C. 912, 919 (1987) (*Todd I*), *aff'd*, 862 F.2d 540 (5th Cir. 1988) (*Todd II*), we recognized the potential for a taxpayer to concede on a ground other than valuation or basis, posing a rhetorical question: ["I]f a taxpayer were to concede that an asset was not placed in service and that no deductions or credits are allowable in order to avoid an addition to tax, could that concession reasonably be refused?"

Such a formula is found, however, in the *General Explanation of the Economic Recovery Tax Act of 1981*, or "blue book," prepared by the staff of the Joint Committee on Taxation. Though not technically legislative history, the Supreme Court relied on a similar blue book in construing part of the Tax Reform Act of 1969, calling the document a "compelling contemporary indication" of the intended effect of the statute. The committee staff explained § 6659's operation as follows:

*"The portion of a tax underpayment that is attributable to a valuation overstatement will be determined after taking into account any other proper adjustments to tax liability.* Thus, the underpayment resulting from a valuation overstatement will be determined by comparing the taxpayer's (1) actual tax liability (i.e., the tax liability that results from a proper valuation and which takes into account any other proper adjustments) with (2) actual tax liability as reduced by taking into account the valuation overstatement. The difference between these two amounts will be the underpayment that is attributable to the valuation overstatement."

\* \* \* \* \* \* \*

Applying this formula, the Tax Court determined that no portion of the Todds' tax underpayment was attributable to their valuation overstatements. The Todds' actual tax liability, \* \* \* did not differ from their actual tax liability adjusted for the valuation overstatements. In other words \* \* \* the Todds' valuation of the property supposedly generating the tax benefits had no impact whatsoever on the amount of tax actually owed. Since the legislative history of § 6659 provides no alternative method of applying the statute, we are persuaded that the formula contained in the committee staff's explanation evidences congressional intent with respect to calculating underpayments subject to the penalty.

[*Id.* at 542–543 (fn. refs. omitted) (quoting Staff of the Joint Committee on Taxation, General Explanation of the Economic Recovery Tax Act of 1981, at 333 (J. Comm. Print 1981) (Blue Book)).]

The Court of Appeals in *Todd II* also quoted an example from the Blue Book which states:

"The determination of the portion of a tax underpayment that is attributable to a valuation overstatement may be illustrated by the following example. Assume that in 1982 an individual files a joint return showing taxable income of $40,000 and tax liability of $9,195. Assume, further, that a $30,000 deduction which was claimed by the taxpayer as the result of a valuation overstatement is adjusted down to $10,000, and that another deduction of $20,000 is disallowed totally for reasons apart from the valuation overstatement. These adjustments result in correct taxable income of $80,000 and correct tax liability of $27,505. Accordingly, the underpayment due to the valuation overstatement is the difference between the tax on $80,000 ($27,505) and the tax on $60,000 ($17,505) (i.e., actual tax liability reduced by taking into account the deductions disallowed because of the valuation overstatement), or $9,800

[sic]." [*Todd II*, 862 F.2d at 543 (alteration in original) (fn. ref. omitted) (quoting Blue Book at 333 n.2).]

The Court of Appeals concluded that "Congress intended * * * [the Blue Book] formula to be applied in determining liability for the" gross valuation misstatement penalty. *Id.*

The Court in *Todd II* reasoned that other considerations supported its holding, stating that "Congress may not have wanted to burden the Tax Court with deciding difficult valuation issues where a case could be easily decided on other grounds"[5] and that "Congress may have wanted to moderate the application of the section 6659 penalty so that it would not be imposed on taxpayers whose overvaluation was irrelevant to the determination of their actual tax liability." *Id.* at 544. The Court of Appeals additionally stated that its holding would not lead to anomalous results, that the effects of its holding "may not be as inequitable as" the Commissioner claimed, and that "the fear that taxpayers will deny profit motivation to avoid section 6659 penalties, is unimpressive." *Id.* at 545. In *McCrary*, we quoted extensively portions of *Todd II* relating to these considerations, finding the argument persuasive and adopting the rule in the case. *McCrary v. Commissioner*, 92 T.C. at 853–854 ("Following this language, we feel compelled * * * to apply the formula referred to by the Court of Appeals and in our *Todd* opinion[.]").

### B. *Cases Following McCrary and Todd*

In addition to the Tax Court, the Court of Appeals for the Ninth Circuit has also adopted the reasoning of and holding in *Todd II*.[6] *See Gainer v. Commissioner*, 893 F.2d 225, 227 (9th Cir. 1990) ("We agree with the reasoning employed by the Fifth Circuit in *Todd*."), *aff'g* T.C. Memo. 1988–416.

---

[5] The Court of Appeals further stated that Congress saw the gross valuation misstatement penalty "as a measure to help the Tax Court control its docket." *Todd II*, 862 F.2d at 544 (citing H.R. Conf. Rept. No. 98–861, at 985 (1984), 1984–3 C.B. (Vol. 2) 1, 239).

[6] The Supreme Court has not ruled on the issue addressed in *Todd II*, but the U.S. Government has recently filed a petition for a writ of certiorari as a result of the Court of Appeals for the Fifth Circuit's ruling for the taxpayer on a closely related issue in *Woods v. United States*, 471 Fed. Appx. 320 (5th Cir. 2012). The Supreme Court has not yet granted or denied the Government's petition.

However, many other Courts of Appeals have rejected *Todd II* as an incorrect interpretation of the Blue Book formula.

In *Fid. Int'l Currency Advisor A Fund, LLC v. United States*, 661 F.3d 667 (1st Cir. 2011) (*Fidelity International*), the Court of Appeals for the First Circuit encountered facts similar to those in *Todd I*. In *Fidelity International*, 661 F.3d at 673–674, the Court of Appeals reviewed *Todd II* and concluded that "*Todd* rests on a misunderstanding of the sources relied on" and noted that "the Ninth Circuit followed *Todd*'s misreading in *Gainer*". The Court of Appeals for the First Circuit noted that *Todd II* and *Gainer* represented a minority view, in opposition to "the dominant view of the circuits that have addressed this issue." *Id.* at 674. Regarding the Blue Book formula relied on in *Todd II*, the Court of Appeals in *Fidelity International*, 661 F.3d at 674, stated:

> In our view, * * * [the Blue Book formula] is designed to avoid attributing to a basis or value misstatement an upward adjustment of taxes that is *unrelated* to the overstatement but due solely to some *other* tax reporting error * * *. This is surely what the quoted language means in excluding from the overstatement penalty increased taxes due to "any other proper adjustments." This is quite different from excusing an overstatement because it is one of two independent, rather than the sole, cause of the same underreporting error.

In *Alpha I, L.P. v. United States*, 682 F.3d 1009 (Fed. Cir. 2012), the Court of Appeals for the Federal Circuit reversed a Court of Federal Claims ruling that the gross valuation misstatement penalty did not apply when a taxpayer conceded the Commissioner's adjustments on grounds other than basis or valuation. The Court of Appeals noted that "The Court of Federal Claims cited several cases to support its decision to defer to the terms of the partnerships' concession without further scrutiny, two of which it found particularly persuasive:" *Todd II* and *Gainer*. *Id.* at 1027–1028. The Court of Appeals in *Alpha I* proceeded to reject "the legal analysis employed in *Todd* and *Gainer*, finding it flawed in material respects." *Id.* at 1028. Reviewing the Blue Book formula and example relied on in *Todd II*, the Court of Appeals in *Alpha I* stated that

> [t]he Blue Book, in sum, offers the unremarkable proposition that, when the IRS disallows two different deductions, but only one disallowance is based on a valuation misstatement, the valuation misstatement penalty should apply only to the deduction taken on the valuation

> misstatement, not the other deduction, which is unrelated to valuation misstatement.
>
> The court in *Todd* mistakenly applied that simple rule to a situation in which the *same* deduction is disallowed based on both valuation misstatement- and non-valuation-misstatement theories. * * *
> [*Id.* at 1029.]

The Court of Appeals concluded that "the flaws in the analysis employed in *Todd* and *Gainer*" were "apparent". *Id.*

In *Gustashaw v. Commissioner*, 696 F.3d 1124 (11th Cir. 2012), *aff'g* T.C. Memo. 2011–195, the Court of Appeals for the Eleventh Circuit affirmed a Tax Court case which held the taxpayers liable for the gross valuation misstatement penalty.[7] On appeal the taxpayers contended that because the transaction lacked economic substance there was no value or basis to misstate and therefore nothing to trigger the valuation misstatement penalties. The taxpayers also attempted to concede their position generally after losing in the Tax Court.

Regarding the concession, the Court of Appeals in *Gustashaw* stated that the taxpayer "did not raise this argument before the Tax Court, and we therefore decline to consider it for the first time on appeal. * * * Even if we were to consider this argument, it is substantially intertwined with and relies on a minority line of cases whose reasoning we reject *infra*." *Id.* at 1135 n.5. The Court of Appeals rejected the reasoning in *Todd II* and *Gainer*, stating that the Court of Appeals in *Todd II* "misapplied" the Blue Book guidance and echoed the previously quoted language of the Court of Appeals for the First Circuit in *Fidelity International*. *See supra* p. 79.

Even the Courts of Appeals for the Fifth and Ninth Circuits have strongly suggested that *Todd II* and *Gainer* are erroneous, although both courts continue to follow the holdings of those cases on the basis of stare decisis. In *Keller v. Commissioner*, 556 F.3d 1056, 1061 (9th Cir. 2009), *aff'g in part, rev'g in part* T.C. Memo. 2006–131, the Court of Appeals for the Ninth Circuit recognized "that many other circuits have" rejected the logic of *Gainer* and that those cir-

---

[7] The Tax Court case did not address *Todd I* or *Todd II* and distinguished *Gainer v. Commissioner*, 893 F.2d 225 (9th Cir. 1990). *See Gustashaw v. Commissioner*, T.C. Memo. 2011–195, slip op. at 22–23, *aff'd*, 696 F.3d 1124 (11th Cir. 2012).

cuits' "sensible method of resolving overvaluation cases cuts off at the pass what might seem to be an anomalous result—allowing a party to avoid tax penalties by engaging in behavior one might suppose would implicate more tax penalties, not fewer." However, the Court of Appeals declined to follow the majority rule, stating: "Nonetheless, in this circuit we are constrained by *Gainer*." *Id.*

In *Bemont Invs., L.L.C. v. United States*, 679 F.3d 339 (5th Cir. 2012), a three-judge panel of the Court of Appeals for the Fifth Circuit again applied *Todd II* in rejecting application of the gross valuation misstatement penalty. However, all three judges joined a special concurrence by Judge Prado which questioned the logic of *Todd II*. After noting that the court's "hands * * * [were] tied" because the court was "precedent-bound to follow" the *Todd II* rule, Judge Prado discussed the Blue Book guidance, stating: "The Blue Book's formula and example are expressing a straightforward principle in mathematical terms: Do not apply the valuation overstatement penalty to a tax infraction, such as an improper charitable deduction, that is unrelated to (i.e., incapable of being attributed to) the valuation overstatement." *Id.* at 351–352, 354 (Prado, J., concurring). Judge Prado opined that "the *Todd* court misread the Blue Book's elementary guidance" and noted that opposition to *Todd II* is "near-unanimous." *Id.* at 352, 354 (citing cases from the Courts of Appeals for the First, Second, Third, Fourth, Sixth, and Eighth Circuits).[8] Judge Prado finally disagreed with *Todd II* on policy grounds, stating that the case "frustrates the purpose of the valuation-misstatement penalty" by "creating * * * [a] perverse incentive structure" whereby taxpayers are encouraged to not solely misstate the value of assets, but to create even more "extreme scheme[s]" so that they may concede a case on grounds other than basis or valuation if found out. *Id.* at 355.

---

[8] The cited opinions were: *Fid. Int'l Currency Advisor A Fund, LLC v. United States*, 661 F.3d 667, 673–674 (1st Cir. 2011); *Merino v. Commissioner*, 196 F.3d 147, 158 (3d Cir. 1999), *aff'g* T.C. Memo. 1997–385; *Zfass v. Commissioner*, 118 F.3d 184, 191 (4th Cir. 1997), *aff'g* T.C. Memo. 1996–167; *Illes v. Commissioner*, 982 F.2d 163, 167 (6th Cir. 1992), *aff'g* T.C. Memo. 1991–449; *Gilman v. Commissioner*, 933 F.2d 143, 151 (2d Cir. 1991), *aff'g* T.C. Memo. 1989–684; and *Massengill v. Commissioner*, 876 F.2d 616, 619–620 (8th Cir. 1989), *aff'g* T.C. Memo. 1988–427.

## C. *Appellate Jurisdiction*

It is not clear to which Court of Appeals an appeal of this case would lie. Section 7482(b)(1)(E) provides that generally a Tax Court decision following a petition under section 6226 (i.e., a petition resulting from issuance of an FPAA) shall be appealable to the U.S. Court of Appeals for the circuit in which "the principal place of business of the partnership" is located.[9] However, section 7482(b)(1) provides that if section 7482(b)(1)(E) does not apply then "such decisions may be reviewed by the Court of Appeals for the District of Columbia." In addition, section 7482(b)(2) provides that "Notwithstanding the provisions of * * * [section 7482(b)(1)], such decisions may be reviewed by any United States Court of Appeals which may be designated by the Secretary and the taxpayer by stipulation in writing."

Not only have the parties not established where AHG Investments' principal place of business was at the time the petition under section 6226 was filed; it was not established whether AHG Investments had a principal place of business at that time. *See, e.g.*, *Peat Oil & Gas Assocs. v. Commissioner*, T.C. Memo. 1993–130, 1993 Tax Ct. Memo LEXIS 130, at *17 (parties failed to establish whether partnerships at issue "had no principal place of business so that venue for appeal is the Court of Appeals for the District of Columbia"). In addition, the parties have not stipulated (or otherwise agreed) to appeal the case to a specific U.S. Court of Appeals. *See* sec. 7482(b)(2).

On the basis of the record before us, it appears that an appeal of this case would lie to the Court of Appeals for the D.C. Circuit,[10] which has not ruled on the gross valuation misstatement penalty issue. There is no evidence that an appeal would lie to the Court of Appeals for the Fifth or Ninth Circuit.

---

[9] For purposes of sec. 7482(b)(1), a partnership's principal place of business shall be determined as of the time the petition under sec. 6226 was filed with the Tax Court.

[10] While it appears AHG Investments was dissolved at some point after 2001, the status of AHG Investments was not conclusively established for purposes of petitioner's motion.

D. *Stare Decisis and Departure From Todd and McCrary*

In *Vasquez v. Hillery*, 474 U.S. 254, 265–266 (1986), the Supreme Court stated:

> [T]he important doctrine of *stare decisis* [is] the means by which we ensure that the law will not merely change erratically, but will develop in a principled and intelligible fashion. * * * While *stare decisis* is not an inexorable command, the careful observer will discern that any detours from the straight path of *stare decisis* in our past have occurred for articulable reasons, and only when the Court has felt obliged "to bring its opinions into agreement with experience and with facts newly ascertained." *Burnet v. Coronado Oil & Gas Co.*, 285 U.S. 393, 412 (1932) (Brandeis, J., dissenting).
>
> Our history does not impose any rigid formula to constrain the Court in the disposition of cases. Rather, its lesson is that every successful proponent of overruling precedent has borne the heavy burden of persuading the Court that changes in society or in the law dictate that the values served by *stare decisis* yield in favor of a greater objective. * * *

We have stated that stare decisis "generally requires that we follow the holding of a previously decided case, absent special justification. This doctrine is of particular importance when the antecedent case involves statutory construction." *Sec. State Bank v. Commissioner*, 111 T.C. 210, 213–214 (1998), *aff'd*, 214 F.3d 1254 (10th Cir. 2000); *see also Hesselink v. Commissioner*, 97 T.C. 94, 99–100 (1991); *BLAK Invs. v. Commissioner*, T.C. Memo. 2012–273, at *10. "Therefore, respondent bears the heavy burden of persuading us that we should overrule our established precedent." *BLAK Invs. v. Commissioner*, at *10.

We find that respondent has met his burden to persuade us to overrule our precedent established by *Todd I* and *McCrary*. In those cases we reasoned that if another ground besides valuation overstatement supports a deficiency, that deficiency cannot be attributable to a valuation overstatement. However, the alternative view has been adopted by the majority of the U.S. Courts of Appeals. These Courts of Appeals have reached the same result as the dissent in *McCrary*. *See McCrary v. Commissioner*, 92 T.C. at 860–866 (Gerber, J., dissenting). Even the Courts of Appeals for the Fifth and Ninth Circuits (which continue to follow the minority rule) have strongly suggested that the majority rule is the correct one.

Today we depart from our precedent following the minority rule and side with the majority rule. By doing so we recognize that an underpayment of tax may be attributable to a valuation misstatement even when the Commissioner's determination of an underpayment of tax may also be sustained on a ground unrelated to basis or valuation. We agree with Judge Prado of the Court of Appeals for the Fifth Circuit that the Blue Book's formula and example merely express "a straightforward principle in mathematical terms: Do not apply the valuation overstatement penalty to a tax infraction, such as an improper charitable deduction, that is unrelated to (i.e., incapable of being attributed to) the valuation overstatement." [11] *Bemont Invs., L.L.C.*, 679 F.3d at 352 (Prado, J., concurring).

In reaching our holding we have considered factors other than those relating to the Blue Book formula and example. The most prominent of these secondary factors regards judicial economy. In *McCrary* we supported our decision in part by noting that it would encourage taxpayers to settle cases involving the valuation misstatement penalty and thus avoid trials on difficult valuation issues. *See McCrary v. Commissioner*, 92 T.C. at 853–854.

Although our ruling today may reduce the number of cases conceded by taxpayers attempting to avoid gross valuation misstatement penalties, [12] concerns relating to judicial economy are not a sufficient reason to disregard or continue to incorrectly apply the clear formula and example in the Blue Book. *See id.* at 863 (Gerber, J., dissenting) ("Judicial economy should apply to situations where alternative grounds are available to support the same determination."). Indeed, our ruling today may improve judicial economy in the long term by discouraging taxpayers from engaging in tax-avoidance practices. *See Gustashaw v. Commissioner*, 696

[11] We agree with *McCrary v. Commissioner*, 92 T.C. 827 (1989), and *Todd I* that the Blue Book formula and example represent the correct method of calculating the portion of an underpayment of tax to which the gross valuation misstatement penalty may be applied (i.e., that the formula represents how Congress intended the penalty to be applied). However, we rule today that the formula yields a different result than the result reached in those cases.

[12] We acknowledge that our ruling today might lead to more trials on questions of valuation.

F.3d at 1136–1137; *Alpha I, L.P.*, 682 F.3d at 1030 ("An interpretation of the statute that allows imposition of a valuation misstatement penalty even when other grounds are asserted furthers the congressional policy of deterring abusive tax avoidance practices."); *Bemont Invs., L.L.C.*, 679 F.3d at 355 (Prado, J., concurring) ("As a policy matter, the *Todd* * * * rule could incentivize improper tax behavior."); *Fidelity International*, 661 F.3d at 673 (although "alternative grounds with lower or no penalties existed for disallowing the same claimed losses," such a fact "hardly detracts from the need to penalize and discourage the gross value misstatements").

In addition, we find the other factors mentioned in *McCrary* in support of its ruling (regarding equitable considerations and moderation of penalties) to be similarly unconvincing. Over the years certain taxpayers have purposefully used the holdings in *Todd I* and *McCrary* to avoid gross valuation misstatement penalties which would otherwise apply to them. *See Bemont Invs., L.L.C.*, 679 F.3d at 355 (Prado, J., concurring) (under the *Todd II* rule, "by crafting a more extreme scheme and generating a deduction that is improper not only due to a basis misstatement, but also for some other reason" taxpayers have increased their "chance[s] of avoiding the valuation-misstatement penalty"). We believe that over the years the actions taken by such taxpayers have "frustrate[d] the purpose of the valuation-misstatement penalty". *Id.*

For the foregoing reasons, we conclude that a taxpayer may not avoid application of the gross valuation misstatement penalty merely by conceding on grounds unrelated to valuation or basis.

### III. *Conclusion*

We hold that petitioner's concessions under section 465 and section 1.704–1(b), Income Tax Regs., do not prevent application of the gross valuation misstatement penalty to the underpayments of tax as a matter of law. Therefore, we will deny petitioner's motion for partial summary judgment under Rule 121. In reaching our holding, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

> *An appropriate order will be issued denying petitioner's motion for partial summary judgment.*

Reviewed by the Court.

THORNTON, HALPERN, FOLEY, VASQUEZ, GALE, MARVEL, WHERRY, KROUPA, HOLMES, PARIS, KERRIGAN, and LAUBER, *JJ.*, agree with this opinion of the Court.

GUSTAFSON, MORRISON, and BUCH, *JJ.*, did not participate in the consideration of this opinion.