T.C. Memo. 2018-45

UNITED STATES TAX COURT

WENDELL FALLS DEVELOPMENT, LLC, GREGORY ALAN FERGUSON,
TAX MATTERS PARTNER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3494-14.                      Filed April 4, 2018.

David M. Wooldridge and Thomas Allen Worth, for petitioner.

Scott Lyons and Johnny Craig Young, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MORRISON, Judge:  Wendell Falls Development, LLC was a limited liability corporation treated as a partnership for federal tax purposes.  For Wendell Falls' 2007 taxable year, the respondent (hereinafter "the IRS") issued a notice of final partnership administrative adjustment.  The notice disallowed a charitable-contribution deduction of $1,798,000 for the contribution of a conservation

[*2] easement by Wendell Falls.  The notice determined a 40% penalty under section 6662(a),[1] (b)(3), and (h); or, in the alternative, a 20% penalty under section 6662(a) and (b)(1), (2), or (3).  A timely petition for readjustment of partnership items was filed by Greg Ferguson, the tax matters partner of Wendell Falls.[2]  See sec. 6226(a).  The Court has jurisdiction under section 6226(f).

We hold that no charitable-contribution deduction is allowable for the donation of the conservation easement by Wendell Falls.  We hold that no penalty is applicable.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended and in effect for the appropriate times.

[2]Sec. 7482(b) governs the venue for appeal from a decision of this Court.  Where our decision involves a partnership-level determination, such as in this case, the appellate venue is the U.S. Court of Appeals for the circuit in which the partnership's principal place of business is located at the time of the filing of the petition.  Sec. 7482(b)(1)(E).  If, however, the partnership has no principal place of business when the petition is filed, the appellate venue will be the U.S. Court of Appeals for the D.C. Circuit.  Sec. 7482(b)(1) (flush language); AHG Invs., LLC v. Commissioner, 140 T.C. 73, 82 (2013).  The petition was filed on February 24, 2014.  Two years before, on January 12, 2012, Wendell Falls was dissolved.  Wendell Falls therefore had no principal place of business on February 24, 2014, when Ferguson filed the petition.  Therefore, the appellate venue for this case will be the U.S. Court of Appeals for the D.C. Circuit (unless the parties stipulate another circuit under sec. 7482(b)(2)).

[*3]                              FINDINGS OF FACT

The Court adopts the stipulations of fact entered into by the parties.

Wendell Falls was organized as a North Carolina LLC by two individual

land developers--Greg Ferguson and Mike Jones--and a corporation based in

Myrtle Beach, South Carolina.  These were the only three members of Wendell

Falls.  Ferguson and Jones were primarily responsible for the day-to-day operation

of Wendell Falls, while the Myrtle Beach corporation was a passive investor.

Between 2004 and 2007, Wendell Falls bought 27 contiguous parcels of

unimproved land, comprising 1,280 acres.  The 1,280 acres is in Wake County,

North Carolina.  When Wendell Falls bought the parcels, they were outside the

boundaries of the town of Wendell.  The town of Wendell is roughly 15 miles east

of Raleigh, North Carolina.

Wendell Falls planned to subdivide the 1,280 acres into a master-planned

community with residential areas, commercial spaces, an elementary school, and a

park.  Wendell Falls planned to then sell the residential lots to homebuilders and

commercial lots to commercial builders.

Wendell Falls identified 125 acres of the 1,280 acres as the land upon which

the park would be placed.  The 125 acres is on the eastern shore of Lake Myra, a

[*4] man-made lake owned by a landowner other than Wendell Falls. The 125 acres includes both sides of Marks Creek, a creek that runs into Lake Myra.

In mid-2005, Wendell Falls and Wake County began discussing the possibility of Wake County's purchasing the 125 acres for use as a county park. Wendell Falls planned to have the remainder of the 1,280 acres annexed by the town of Wendell before it was developed.

Sometime after discussions regarding the purchase of the 125 acres began, Wendell Falls proposed placing a conservation easement on the 125 acres before the sale. Wendell Falls wanted the easement, which would be held by a conservation organization, in order to restrict the 125 acres to park use. Throughout much of 2006, Wendell Falls and Wake County exchanged emails regarding what restrictions the conservation easement would include and which charitable organization would hold the easement.

On March 17, 2006, Wendell Falls submitted for approval to the town of Wendell a planned unit development ("PUD") on the 1,280 acres. When the PUD was originally submitted, Wendell Falls did not yet own all 1,280 acres. Some of the acreage Wendell Falls did not yet own was under contract; the rest it anticipated buying in the short term. The PUD was revised on four occasions between March and October 2006 to reflect Wendell Falls' acquisitions of the rest

[*5] of the 1,280 acres. At some point, the town of Wendell annexed the 1,280 acres except for the 125 acres.

On October 9, 2006, the PUD was approved by the town of Wendell. The PUD documented the proposed master-planned community, including: the subdivision plan, installment sites for utilities, and amenities. As described in the PUD, the master-planned community, when completed, would have up to 4,000 residential lots. The PUD stated that the 125 acres would be dedicated to the creation of "Wendell Falls Park". There was a map of the 125 acres in the PUD. The 125 acres was labeled on the map as Wendell Falls Park. However, a portion of the PUD other than the map inadvertently stated that the area of Wendell Falls Park was 160 acres. The approval of the PUD by the town of Wendell meant that the town would permit under its zoning ordinances the uses of the land described by the PUD. The only part of the 1,280 acres unaffected by the town's approval of the PUD was the 125 acres described as Wendell Falls Park, which, even though described in the PUD, was outside the boundaries of the town and therefore not subject to the town's zoning ordinances. The PUD stated that Wendell Falls received no preferential zoning in exchange for setting aside the 125 acres for use as a park. This statement is consistent with the rest of the record.

**[\*6]**  On November 27, 2006, an appraiser named C.P. Shaw appraised the 125

acres at $3,219,000.  Shaw had been hired by Wake County to inform itself of the

value of the 125 acres in connection with its negotiations with Wendell Falls to

buy the land.  Because the PUD inadvertently referred to 160 acres, rather than

125 acres, Shaw incorrectly valued the land as if it were 160 acres rather than 125.

On December 4, 2006, the Wake County Board of Commissioners

authorized the county to buy land for a future park facility.  The minutes of the

board meeting recorded the decision.  It appears that the county intended to

authorize the purchase of the 125 acres identified in the map in the PUD as

Wendell Falls Park.  However, because of the incorrect reference in the PUD to

160 acres, or perhaps because of Shaw's using the incorrect acreage in his

appraisal, the minutes reflect that the county commissioners authorized the

purchase of 160 acres rather than 125 acres.  The minutes state:

> Interest has been expressed for a future public park facility on
> approximately 60 acres of this 160.41 acre parcel.  The proposed park
> would over look [sic] the privately owned Lake Myra. This request is
> for approval of acquisition of 160 acres of open space on Lake
> Myra/Marks Creek from in [sic] Wendell Falls Development, LLC.
> [sic] with a sale price of $3,186,000 with a restriction that the
> property be developed only for park use.

> Upon motion by Commissioner Bryan, seconded by Commissioner
> Brown, the Board of Commissioners voted unanimously to authorize
> the County Manager to execute a purchase agreement for the Wendell

**[*7]** Falls Open Space tract of 160.41 acres for $3.186 million, subject to terms and conditions acceptable to the County Attorney.

On December 14, 2006, Wake County and Wendell Falls entered into a purchase agreement regarding the 125 acres. The purchase agreement described the land by reference to the map in the PUD, which accurately depicted the 125 acres. However, because of the incorrect reference in the PUD to 160 acres (or perhaps because of either Shaw's using the incorrect acreage in his appraisal or the reference in the county board minutes to 160 acres rather than 125 acres), the purchase agreement inadvertently stated that the acreage of the mapped land was 160 acres. The purchase agreement stated that placing a mutually agreeable conservation easement on the land was a precondition to the sale. Under the purchase agreement, Wake County agreed to buy the land for $3,186,000. This amount was very close to Shaw's appraised value of $3,219,000.

After they executed the purchase agreement, Wendell Falls and Wake County discovered the mistake about the acreage. To correct this mistake, the county ordered a new appraisal of the 125 acres. This time, the county turned to the appraisal firm of Cushman & Wakefield.

**[*8]** On May 20, 2017, Cushman & Wakefield prepared its appraisal of the 125 acres. It appraised the land as a fee simple interest, unrestricted by any conservation easement. It valued the land at $3,020,000.

On June 4, 2007, the Wake County Board of Commissioners reauthorized the purchase of the 125 acres for $3,020,000.

Sometime thereafter, Wendell Falls and Wake County amended the December 2006 purchase agreement. Under the amended purchase agreement, Wake County agreed to buy the 125 acres from Wendell Falls for $3,020,000. The donation of a mutually agreeable conservation easement was a precondition to the sale of the 125 acres under the amended purchase agreement.

On June 7, 2007, the Wake County Register of Deeds recorded the following two instruments in its deed book: (1) a conservation easement on the 125 acres granted by Wendell Falls in favor of Smokey Mountain National Land Trust and (2) a general warranty deed transferring ownership of the 125 acres from Wendell Falls to Wake County. The two instruments were recorded in the deed book in that order. Each instrument bears a time and date stamp with the same time and date: 11:30:01 a.m., June 7, 2007. These stamps were presumably made by the register of deeds.

[*9]    The easement permitted only the following structures to be built on the 125 acres:  (1) an environmental education center, (2) an overnight lodge, (3) one or more recreational day-use facilities, (4) sports fields, (5) an elevated wooden walkway, and (6) related maintenance facilities.  The location and size of each type of structure was also restricted under the terms of the easement.

On October 3, 2008, Wendell Falls filed a timely Form 1065--"U.S. Return of Partnership Income"--for the 2007 tax year.  It attached Schedule K--"Partners' Distributive Share Items".  On line 13a of Schedule K--a line labeled "Contributions"--Wendell Falls reported a $1,798,000 charitable-contribution deduction for its contribution of the conservation easement.  Attached to the return was an appraisal of the conservation easement, which was prepared by Bruce Sauter.  The appraisal valued the easement at $4,818,000.  The return reported the resulting deduction as if Wake County had paid $3,020,000 to Wendell Falls for a $4,818,000 easement.  Therefore, the return reported that the amount of the deduction was $1,798,000 ($4,818,000 − $3,020,000 = $1,798,000).  In actuality, Wake County paid the $3,020,000 to Wendell Falls for the land, not the easement.

On April 23, 2009, Wendell Falls filed an amended Form 1065 and an attached Schedule K.  On line 13a of Schedule K, Wendell Falls reported that the charitable-contribution deduction for the contribution of the conservation

[*10] easement was $4,818,000. Wendell Falls also attached a form titled "Explanation of Changes on Amended Return" to the amended Form 1065. On this form, Wendell Falls stated that the deduction had been incorrectly reported on the original Form 1065, and that the correct amount of the deduction was the fair market value of the conservation easement, $4,818,000.

On November 25, 2013, the IRS sent Ferguson (in his capacity as the tax matters partner of Wendell Falls) a notice of final partnership administrative adjustment. In the notice, the IRS determined that the amount of the charitable-contribution deduction was zero.

Ferguson called Michael Smith as an expert witness to value the easement. He valued the easement at $5,919,000.

The IRS called Robert Duckett as an expert witness to value the easement. He valued the easement at $1,600,000.

OPINION

1.    Charitable-contribution deduction for the easement

Section 170(a) allows a deduction for a charitable contribution. A charitable contribution is defined by section 170(c) as a "contribution or gift to or for the use of" various specified charitable organizations and governments. No deduction for a charitable contribution is allowed if the taxpayer expects a

**[*11]** substantial benefit from the contribution. United States v. Am. Bar Endowment, 477 U.S. 105, 116 (1986); see also Elrod v. Commissioner, 87 T.C. 1046, 1075 (1986) ("The charitable contribution deduction is not allowed where a taxpayer intends to obtain a 'direct or indirect benefit in the form of enhancement in the value or utility of the taxpayer's remaining land or otherwise to benefit the taxpayer.'" (quoting Sutton v. Commissioner, 57 T.C. 239, 243 (1971))). However, if the benefit received is merely incidental to a charitable purpose, then a deduction is allowable. See McGrady v. Commissioner, T.C. Memo. 2016-233, at *25 (citing McLennan v. United States, 24 Cl. Ct. 102, 107 (1991), aff'd, 994 F.2d 839 (Fed. Cir. 1993)). In addressing whether a taxpayer expected a substantial benefit from the contribution, we look to the external features of the transaction. See Hernandez v. Commissioner, 490 U.S. 680, 690-691 (1989); Rolfs v. Commissioner, 135 T.C. 471, 487 (2010), aff'd, 668 F.3d 888 (7th Cir. 2012).

The IRS argues that (1) Wendell Falls' contribution of the conservation easement on the 125 acres to Smokey Mountain National Land Trust ensured that Wake County, as the owner of the underlying land, could practically use the 125 acres only for a county park and (2) Wendell Falls expected a substantial benefit from the easement because the prospect of a public park on the 125 acres would

**[*12]** increase the value of the rest of the adjoining 1,280 acres owned by Wendell Falls.

That Wendell Falls expected a substantial benefit from the contribution of the easement is supported by the record. When it donated the easement, Wendell Falls owned land adjoining the eased property; i.e., the unencumbered portion of the 1,280 acres. On the unencumbered portion of the 1,280 acres, Wendell Falls planned to create a master-planned community, which was designed so that all of the clusters of residential areas would have access to the 125-acre park through a system of "greenways". These plans were evidenced by the PUD approved by the town of Wendell. As the prospective seller of the residential lots in the clusters, Wendell Falls would benefit from the increased value to the lots from the park as an amenity. It is uncontested that the easement restricts the 125 acres to uses related to establishing a park. Ferguson, one of the two managing members of Wendell Falls, wrote in an email to Wake County that Wendell Falls "need[ed] to ensure that the County uses the park for its intended use." This confirms that Wendell Falls expected to receive value from the park and intended the easement to ensure that there would be a park on the 125 acres.

**[*13]** We therefore find that Wendell Falls donated the easement with the expectation of receiving a substantial benefit.[3] A charitable-contribution deduction is not allowable because of this expectation.

In the alternative, we also consider the value of the easement. The easement must have value in order for it to generate a charitable-contribution deduction. See Am. Bar Endowment, 477 U.S. at 118; sec. 1.170A-14(h)(3)(i), Income Tax Regs. As explained below, the value of the easement is zero.

The amount of the allowable charitable-contribution deduction is the value of the contributed property. See sec. 1.170A-1(a), (c)(1), Income Tax Regs. This is also the case when the contributed property is a conservation easement. See sec. 1.170A-14(h)(3)(i), Income Tax Regs. Because there is no evidence in the record of sales of easements comparable to the easement contributed by Wendell Falls to Smokey Mountain National Land Trust, the value of the easement is equal to the value of the land before the easement minus the value of the land after the easement. See id. (third sentence). The land itself is valued at its highest and best

_____

[3]We make this factual determination (and all other factual determinations regarding the allowance of the charitable-contribution deduction) on the preponderance of the evidence. Therefore, we need not resolve the dispute between the parties as to which party has the burden of persuasion. Estate of Turner v. Commissioner, 138 T.C. 306, 309 (2012), supplementing T.C. Memo. 2011-209.

[*14] use. Olson v. United States, 292 U.S. 246, 255 (1934); sec. 1.170A-14(h)(3)(i) and (ii), Income Tax Regs. As evidenced by the plan developed by Wendell Falls--which owned the entire 1,280 acres, including the 125 acres--the best use of the 125 acres was as parkland in the midst of a master-planned community. The conservation easement therefore did not diminish the value of the 125 acres because it did not prevent it from being put to its best use. See Mountanos v. Commissioner, T.C. Memo. 2013-138, at *17, aff'd, 651 F. App'x 592 (9th Cir. 2016). The value of the easement is therefore zero.[4] Our answer does not change if the land valued before and after the easement is the entire 1,280 acres rather than the 125 acres. See sec. 1.170A-14(h)(3)(i), Income Tax Regs. (fourth sentence). We believe, as Wendell Falls did, that using the 125 acres as a park would make the master-planned community more desirable and therefore increase the value of the residential and commercial lots that Wendell Falls eventually intended to sell. Taking this enhancement into account, the total value of the 1,280 acres would be undiminished by the easement, and this undiminished

---

[4]That the easement did not diminish the value of the 125 acres is confirmed by Wake County's actions. Wake County valued the 125 acres without the easement at $3,020,000; it then bought the 125 acres for that amount even though it was burdened by the easement.

[*15] value leads to the conclusion that the value of the easement is zero.[5]

Because Wendell Falls received a substantial benefit from the donation of the

easement, and because the easement was worth nothing anyway, we hold that no

charitable-contribution deduction for the easement is allowable.

We need not resolve the other arguments the IRS makes against the

deduction.

2.    Penalty

We must also consider whether there should be a penalty for the reporting

of the charitable-contribution deduction for the easement.  Section 6662(a)

imposes a penalty of 20% on an underpayment of tax attributable to any of the

following:  negligence, a substantial understatement of income tax, or a substantial

valuation misstatement.  See sec. 6662(b)(1), (2), and (3).  Section 6662(h)

increases the penalty to 40% if the underpayment is attributable to a gross

valuation misstatement.  The final notice of partnership adjustment determined a

---

[5]Neither valuation expert witness accounted for the enhancement to the surrounding land created by access to the park.  The IRS's expert's failure to consider the enhancement is inconsistent with the evidence in this case, which, as the IRS points out, includes a PUD showing that the park was linked to the residential units.  A court is not required to accept an opinion of an expert witness that is contrary to the evidence.  See Boltar, L.L.C. v. Commissioner, 136 T.C. 326, 335 (2011); see also Estate of Newhouse v. Commissioner, 94 T.C. 193, 244 (1990).

[*16] 40% penalty for gross valuation misstatement, or, in the alternative, a 20% penalty for negligence, a substantial understatement of income tax, or a substantial valuation misstatement. After trial, the IRS conceded the 40% penalty. It also conceded the 20% penalty to the extent it is based on a substantial valuation misstatement. The IRS continues to assert a 20% penalty based on either negligence or a substantial understatement of income tax.

The 20% penalty is not applicable when there was reasonable cause for the reporting of a deduction and the deduction was reported in good faith. See sec. 6664(c)(1). Ferguson has the burden of proving by a preponderance of the evidence that there was reasonable cause for Wendell Falls' reporting of the charitable-contribution deduction and that the deduction was reported in good faith. See Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). The most important factor in determining reasonable cause and good faith is the extent of the effort to ascertain the proper tax treatment of the transaction in question. Sec. 1.6664-4(b)(1), Income Tax Regs. Our determinations regarding substantial benefit depend on the resolution of tests for which the factfinder has broad discretion--(1) whether there was a substantial expected benefit to Wendell Falls, and if so, (2) whether the benefit was incidental. We do not think that Wendell Falls' failure to anticipate the adverse resolution of these tests shows that it did not

[*17] make sufficient effort to assess the proper tax treatment of the easement. See Bunney v. Commissioner, 114 T.C. 259, 266 (2000); Lemishow v. Commissioner, 110 T.C. 110, 114 (1998), supplemented by 110 T.C. 346 (1998). As to the value of the easement, Wendell Falls retained two different state-certified real estate appraisers, Sauter and Smith, to appraise the easement. Although neither appraiser correctly accounted for the enhancement conferred by the easement on the unencumbered property, neither did the IRS's trial expert. Under the narrow circumstances of this case, we hold that there was reasonable cause for reporting the charitable-contribution deduction for the easement and that the deduction was reported in good faith. We therefore hold that the section 6662(a) penalty does not apply to an underpayment of tax resulting from the adjustment to the partnership item, the charitable-contribution deduction.

On February 8, 2018, the IRS filed a motion to reopen the record to admit evidence that the initial determination of the section 6662(a) penalty, to the extent it was based on negligence or a substantial understatement of income tax, had been approved by a supervisor as required by section 6751(b). Because of our holding regarding reasonable cause and good faith, reopening the record would not change the outcome of the case. Therefore, we will deny the motion.

**[*18]** To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent on the deduction and for</u>

<u>petitioner on the penalty.  An order will be</u>

<u>issued denying respondent's February 8,</u>

<u>2018, motion to reopen the record</u>.