[PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 19-11836

_____

ALAN H. GINSBURG,

Plaintiff-Appellant,

*versus*

UNITED STATES OF AMERICA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:17-cv-01666-CEM-DCI

_____

Before BRANCH, LUCK, and ED CARNES, Circuit Judges.

LUCK, Circuit Judge:

The tax code prohibits the Internal Revenue Service from assessing a tax penalty "unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination." 26 U.S.C. § 6751(b)(1). The question in this case is when must a partner in a limited liability company or a partnership raise the section 6751(b)(1) supervisory approval issue: Before or after he files his refund lawsuit? During the partnership-level proceedings or the partner-level proceedings? We hold that, in partnership tax cases controlled by the Tax Equity and Fiscal Responsibility Act of 1982, the supervisory approval issue must be exhausted with the Service before the partner files his refund lawsuit and it must be raised during the partnership-level proceedings. Because Alan H. Ginsburg did not exhaust the section 6751(b)(1) supervisory approval issue before he filed his refund lawsuit, and because he didn't raise the issue during the partnership-level proceedings, we affirm the summary judgment for the government.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### Tax Equity and Fiscal Responsibility Act of 1982

Because this is a partnership tax case, we start with a few words about how partnership taxation works. "A partnership does not pay federal income taxes; instead, its taxable income and losses pass through to the partners." United States v. Woods, 571 U.S. 31,

38 (2013) (citing 26 U.S.C. § 701).  "A partnership must report its tax items for the taxable year on an information return . . . and must issue to each partner such information showing that partner's distributive share of the partnership's tax items . . . ." *Greenberg v. Comm'r*, 10 F.4th 1136, 1145 (11th Cir. 2021).  "In turn, the individual partners must report their distributive shares of the partnership's tax items on their own respective income tax returns." *Id.*

Before 1982, "tax matters pertaining to all the members of a partnership were dealt with just like tax matters pertaining only to a single taxpayer:  through deficiency proceedings at the individual-taxpayer level." *Woods*, 571 U.S. at 38.  The inability to correct a partnership return in a single, unified proceeding "led to duplicative proceedings and the potential for inconsistent treatment of partners in the same partnership." *Id.*; *see also Greenberg*, 10 F.4th at 1145 ("Before the enactment of TEFRA, the [Service] was unable to correct errors on a partnership's return in a single, unified proceeding; instead, tax matters pertaining to the individual partners were conducted through deficiency proceedings at the individual-taxpayer level.").  To fix this perceived problem, Congress enacted the Tax Treatment of Partnership Items Act of 1982 as Title IV of the Tax Equity and Fiscal Responsibility Act of 1982.  96 Stat. 648 (codified as amended

at 26 U.S.C. §§ 6221–6232 (2006 ed. and Supp. V)).[1]  *See Woods*, 571 U.S. at 38.

Under the Act, partnership-related tax matters are resolved in two stages:  first the partnership level; and then the partner level. *Id.* at 39.  During the partnership-level proceedings, the Service may adjust the "partnership items," or items relevant to the partnership as a whole, by issuing a notice of final partnership administrative adjustment. *Id.* at 36, 39.  *See* 26 U.S.C. §§ 6221, 6231(a)(3).  During the partnership-level proceedings, the Service also assesses and collects "any tax attributable" to the partnership and determines the "applicability of any penalty." *Id.* § 6221(a). The partnership can challenge the adjustment notice by filing a petition for readjustment with the United States Tax Court, the Court of Federal Claims, or a federal district court. *Id.* § 6234(a).  A reviewing court has jurisdiction to "determine all partnership-related items for the partnership taxable year to which the notice . . . relates, the proper allocation of such items among the partners, and the applicability of any penalty, addition to tax, or additional amount for which the partnership may be liable." *Id.* § 6234(c).  All

---

[1] The Act's procedures for partnership taxation were prospectively repealed by the Bipartisan Budget Act of 2015, Pub. L. No. 114-74, § 1101(a), 129 Stat. 584, 625, effective for taxable years beginning on or after January 1, 2018. Here, the relevant tax years were 2001 and 2002, so the Act's procedures guide our analysis.  While our decision today will have "little impact" on the taxable years on or after January 1, 2018, it nevertheless will be "relevant . . . with respect to taxable years beginning before January 1, 2018." *Highpoint Tower Tech. Inc. v. Comm'r*, 931 F.3d 1050, 1052 n.2 (11th Cir. 2019).

partners are bound "by any final decision in a proceeding brought . . . with respect to the partnership." *Id.* § 6223(b).

Once the partnership-level proceedings become final, a partner-level proceeding begins. *Woods*, 571 U.S. at 39. At this partner-level proceeding, the results of the partnership-level proceeding are "conclusive" on the individual partners (with the exception of some partner-specific defenses). *Id.* at 41 (quoting 26 U.S.C. § 6230(c)(4)). While the question of whether a penalty should be applied is determined at the partnership-level proceeding, the question of whether a penalty will be imposed against a specific partner is determined at a partner-level proceeding. *Id.* at 40–41. "Each partner remains free to raise [at the partner-level proceeding] any reasons why the penalty may not be imposed on him specifically." *Id.* at 42.

### *Ginsburg's partnership-level proceedings*

Turning to this case, on October 29, 2001, Ginsburg, Alpha Consultants LLC, Samuel Mahoney, and Helios Trading LLC formed AHG Investments LLC. On its 2001 partnership tax return, AHG Investments reported a $25,618 total loss. But on Ginsburg's 2001 tax return, he reported a $10,069,505 loss from AHG Investments. Ginsburg used the reported $10,069,505 loss from AHG Investments to offset his $22,826,616 in income and decrease his tax liability by $3,583,873.

On September 11, 2008, the Service sent Ginsburg notice that it was proposing adjustments to the partnership items on AHG

Investments's 2001 and 2002 tax returns.  The Service alleged that AHG Investments and its partners had not established that AHG Investments was a "partnership as a matter of fact."  Instead, it "was formed . . . solely for purposes of tax avoidance."  AHG Investments "was a sham" and "lacked economic substance," the Service wrote, and its "principal purpose . . . was to reduce substantially the present value of its partners' aggregate federal tax liability."    Thus, the Service said, it would disregard the partnership, the "purported partners of AHG Investments" would not be treated as partners, and "any purported losses" would not be "allowable as deductions."    For Ginsburg, the Service "disallowed" the $10,069,505 loss from AHG Investments on his 2001 tax return.  And the Service said it would impose a forty percent penalty for "gross valuation misstatement."  Any of the partners could contest the Service's adjustments in the tax court, the court of federal claims, or the district court "in the district of the partnership's principal place of business."

At the partnership-level proceeding, Ginsburg petitioned the tax court to contest the part of the Service's adjustment notice imposing a forty percent penalty for grossly misstating AHG Investments's value. *AHG Invs., LLC v. Comm'r*, 140 T.C. 73, 73– 74 (2013).  Ginsburg agreed that he was not entitled to deduct AHG Investments's losses because he was not at risk and the partnership's transactions did not have substantial economic effect. *Id.*  But Ginsburg contested the forty percent gross valuation misstatement penalty. *Id.*

Based on Ginsburg's concessions, the tax court found that AHG Investments "was a sham, lacked economic substance[,] and was formed . . . for purposes of tax avoidance." The tax court concluded that AHG Investments must be "disregarded for federal income tax purposes," and adjusted AHG Investments's 2001 tax return, consistent with the Service's notice, to show no losses. The tax court also rejected Ginsburg's petition, *id.* at 85, and concluded that the forty percent penalty "applies to any underpayment of tax attributable to any gross valuation misstatement . . . , subject to any partner-level defenses."

## *Ginsburg's partner-level proceedings*

Based on the tax court's decision, the Service sent Ginsburg a notice of computational adjustment "which reflect[ed] the amount [he] owe[d] based upon adjustments to a partnership[] in which [he was] directly or indirectly invested." The computational adjustment disallowed the $10,069,505 loss from Ginsburg's 2001 tax return, which resulted in a $2,458,964 tax deficiency. The Service also calculated the forty percent penalty as $983,586. The notice told Ginsburg that if he wanted to dispute the computational adjustment made to his return, or if he wanted to "assert partner-level defenses to any penalty imposed in [the] notice," he had to pay the adjusted tax in full and "then file a claim for refund" with the Service. If the Service disallowed his refund claim, Ginsburg could "file a refund suit as provided by law."

Ginsburg paid the $2,458,964 tax deficiency, the $983,586 penalty, and $3,208,674 in interest on the tax deficiency and penalty

and filed a claim for refund with the Service. Ginsburg asked the Service to refund his $983,586 penalty and $876,198 of interest paid on the penalty. Ginsburg explained that he was entitled to a refund because he reasonably relied in good faith on accounting advice, a tax opinion, legal advice, tax return services, and financial advice from reputable firms and professionals.[2]

The Service denied Ginsburg's refund claim. But the Service told Ginsburg that if he disagreed with its decision, he could "file suit to recover tax, penalties, or other amounts, with the United States District Court that has jurisdiction or with the United States Court of Federal Claims."

Ginsburg filed a partner-level refund lawsuit against the United States in the Middle District of Florida. He alleged that he was not liable for the $983,586 penalty, and the $876,198 interest on the penalty, "because he acted reasonably and in good faith with respect to the underlying tax issues."

The parties moved for summary judgment. The government argued that Ginsburg could not and did not reasonably rely on the advice of his accountants, tax experts, lawyers, and financial advisors to avoid the penalty. Ginsburg contended that he was entitled to summary judgment because the government did not get "written approval of the penalty by an

---

[2] Ginsburg also explained that he overpaid interest because, under the tax code, interest should have been suspended between November 18, 2002 and October 3, 2004. But the overpaid-interest issue isn't relevant to this appeal.

immediate supervisor," as required by 26 U.S.C. section 6751(b)(1). Without approval, Ginsburg asserted, "the penalty is void." The government had the burden to show that the Service complied with section 6751(b)(1), Ginsburg argued, and there was no dispute that it didn't meet that burden here.

The district court granted the government's summary judgment motion and denied Ginsburg's motion. The district court concluded that Ginsburg could not have reasonably relied on the advice of his tax, legal, and financial advisors. And the district court determined that it couldn't consider Ginsburg's section 6751(b) supervisory approval argument because he didn't exhaust it in his claim for refund with the Service.

Ginsburg appeals the summary judgment for the government.

## STANDARD OF REVIEW

We review the district court's summary judgment de novo, viewing the facts and drawing all reasonable inferences in the light most favorable to the non-moving party. *NextEra Energy, Inc. v. United States*, 893 F.3d 1353, 1357 (11th Cir. 2018). Summary judgment is appropriate if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). We also review the district court's interpretation of the federal tax code de novo. *Batchelor-Robjohns v. United States*, 788 F.3d 1280, 1284 (11th Cir. 2015).

## DISCUSSION

Ginsburg raises the same argument here as he did in his summary judgment motion. He argues that under 26 U.S.C. section 7491(c), the government has "the burden of production in any court proceeding with respect to the liability of any individual for any penalty." 26 U.S.C. § 7491(c). The government's burden of production, Ginsburg continues, includes the requirement in section 6751(b)(1) that "[n]o penalty . . . be assessed unless the initial determination of [the] assessment is personally approved (in writing) by the immediate supervisor of the individual making [the] determination." *Id.* § 6751(b)(1). The supervisory approval requirement is an "element" of the government's case and "part of its burden of production." The government, Ginsburg contends, never established that it could satisfy this burden.

The government responds that, for two reasons, it was not required to show that the penalty was approved by an immediate supervisor. First, the government contends, Ginsburg didn't exhaust his argument that the Service didn't comply with the supervisory approval requirement. Ginsburg had to exhaust the supervisory approval issue with the Service first before he could raise it as part of his refund lawsuit. Second, the government argues, Ginsburg had to raise all partnership-level defenses during the partnership-level proceedings. The section 6751(b)(1) supervisory approval issue is a partnership-level defense that cannot be raised during the partner-level proceedings.

*Failure to exhaust*

We agree with the government that Ginsburg did not exhaust with the Service his supervisory approval argument. "No suit or proceeding shall be maintained in any court for the recovery . . . of any penalty claimed to have been collected without authority . . . until a claim for refund or credit has been duly filed with the [Service], according to the provisions of law in that regard, and the regulations of the [Service] established in pursuance thereof." *Id.* § 7422(a).

The Service's regulations explain what must be in a duly filed claim for refund. "The claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the [Service] of the exact basis thereof." 26 C.F.R. § 301.6402-2(b)(1). And if the claim for refund "does not comply with" the duly filed requirement, it "will not be considered for any purpose as a claim for refund or credit." *Id.*

That means "[a] taxpayer may not sue the United States for a tax refund until [he] first files a refund claim with the government." *Charter Co. v. United States*, 971 F.2d 1576, 1579 (11th Cir. 1992) (citing 26 U.S.C. § 7422(a) (1988)). He must "detail each ground upon which a refund is claimed," and any later "litigation of the government's denial of a refund claim is limited to the grounds fairly contained within the refund claim." *Id.* (citing 26 C.F.R. § 301.6402-2(b)(1)). "Federal courts have no jurisdiction to entertain taxpayer allegations that impermissibly vary or

augment the grounds originally specified by the taxpayer in the administrative refund claim." *Id.*

There's no dispute that Ginsburg's administrative refund claim didn't include his supervisory approval argument. But Ginsburg argues that the "[n]otwithstanding" clause in section 7491(c) means that the statute "trump[s] and override[s] any conflicting provision" in the tax code, including the exhaustion requirement in section 7422(a). Section 7491(c) reads, in full, that "[n]otwithstanding any other provision of this title, the [Service] shall have the burden of production in any court proceeding with respect to the liability of any individual for any penalty, addition to tax, or additional amount imposed by this title." 26 U.S.C. § 7491(c). This means, Ginsburg says, that the burden of production imposed by section 7491(c) applies notwithstanding any other provision of the tax code. The district court erred, he asserts, in not requiring the Service to produce evidence that an immediate supervisor approved the penalty in writing.

Ginsburg reads too much into the "notwithstanding" clause. It doesn't trump any other provision of the tax code. "[T]he use of . . . a 'notwithstanding' clause clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section." *Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10, 18 (1993). Conflicting provisions; not any provision of the tax code.

We see no conflict between the burden-of-production requirement in section 7491(c) and the exhaustion requirement in

section 7422(a).   Section 7491(c) sets the Service's burden of production "in any court proceeding."   26 U.S.C. § 7491(c).   But section 7422(a) requires that a tax refund claim be filed with the Service before a taxpayer can bring a refund "suit or proceeding." *Id.* § 7422(a).   It does not deal with court proceedings or the elements the government must prove in those court proceedings; instead, it concerns "administrative exhaustion." *United States v. Williams*, 514 U.S. 527, 533 (1995).   Section 7422(a) makes "the proper filing of an administrative refund claim a condition precedent to bringing a lawsuit for a refund." *Wachovia Bank, N.A. v. United States*, 455 F.3d 1261, 1265 (11th Cir. 2006) (citing *Little People's Sch., Inc. v. United States*, 842 F.2d 570, 571 (1st Cir. 1988)).

The section 7422(a) exhaustion requirement "permit[s] the [Service] to correct claimed errors in the first instance and, if disagreement persists, to limit the litigation to the issues which have been reexamined by the [Service] and which [it] is prepared to defend." *Carmack v. Scofield*, 201 F.2d 360, 362 (5th Cir. 1953). Section 7491(c), on the other hand, applies to the limited litigation issues that have been exhausted and are now in court, and puts the burden of production on the Service as to the exhausted issues.

Ginsburg also argues that he couldn't have raised the supervisory approval argument in his refund claim with the Service "because he did not learn of the basis for that argument until discovery in the district court proceedings."   But the Service sent Ginsburg notice of the penalty on June 20, 2016, months before his

claim for refund on December 15, 2016. The part of the notice assessing the penalty was signed only by the Service examiner and made no mention of an "immediate supervisor." 26 U.S.C. § 6751(b)(1). When Ginsburg filed his claim for refund with the Service, he could have—but didn't—raise that there was no signature on the penalty notice from an immediate supervisor even though section 6751(b)(1) prohibited the Service from assessing a penalty "unless the initial determination of such assessment [was] personally approved (in writing) by the immediate supervisor of the individual making such determination." *Id.* Because the district court was limited to the grounds Ginsburg raised in his claim for refund, and because the supervisory approval argument wasn't exhausted before the Service, the district court rightly didn't consider it in Ginsburg's refund lawsuit.

### *Failure to raise during the partnership-level proceedings*

We also agree with the government that the section 6751(b)(1) supervisory approval issue was a partnership-level defense that had to be raised during the partnership-level proceedings. The supervisory approval argument isn't a partner-level defense that Ginsburg can raise in his refund lawsuit.

As we explained earlier, under the Tax Equity and Fiscal Responsibility Act, there are "two stages" for "partnership-related tax matters":  partnership-level proceedings and partner-level proceedings. *Woods*, 571 U.S. at 39. The applicability of any penalties is determined at the first, partnership-level stage. *See* 26 U.S.C. § 6221(a) ("[T]he applicability of any penalty . . . shall be

determined, at the partnership level . . . .").  Under the Act, the Supreme Court explained in *Woods*, "a court in a partnership-level proceeding . . . has jurisdiction to determine not just partnership items, but also 'the applicability of any penalty . . . which relates to an adjustment to a partnership item.'"  571 U.S. at 39 (quoting 26 U.S.C. § 6226(f)).  The Act "gives courts . . . jurisdiction to determine the applicability of any penalty that could result from an adjustment to a partnership item."  *Id.* at 41; *see also id.* (The Act "provides that the *applicability* of some penalties must be determined at the partnership level.").  The regulations underscore that the "[a]ssessment of any penalty . . . shall be made based on partnership-level determinations," which "include all the legal and factual determinations that underlie the determination of any penalty . . . other than partner-level defenses."  26 C.F.R. § 301.6221-1(c).

Importantly, "a partnership-level determination 'concerning the applicability of any penalty . . . which relates to an adjustment to a partnership item' is 'conclusive' in a subsequent refund action."  *Woods*, 571 U.S. at 41 (quoting 26 U.S.C. § 6230(c)(4)).  While the penalty determination is conclusive, the partner can still assert in his refund lawsuit "any partner level defenses that may apply."  *Id.*

"Partner-level defenses are limited to those that are personal to the partner or are dependent upon the partner's separate return and cannot be determined at the partnership level."  26 C.F.R. § 301.6221-1(d).  For example:  (1) "a partner may not have carried

over [the partnership return's] errors to his own return;" (2) "if he did, the errors may not have caused him to underpay his taxes by a large enough amount to trigger the penalty;" and (3) if he did underpay his taxes by a large enough amount to trigger the penalty, "the partner may nonetheless have acted in good faith with reasonable cause." *Woods*, 571 U.S. at 40. Ginsburg raised this third example—good-faith reliance on the advice of professionals—in his claim for refund.

Here, during the partnership-level proceedings, the Service determined that the forty percent penalty applied to AHG Investments because it made gross valuation misstatements. In response, Ginsburg did not raise the section 6751(b)(1) supervisory approval issue. Instead, he argued to the tax court that the forty percent penalty "[did] not apply as a matter of law because [he] conceded the correctness of adjustments proposed [by the Service] on grounds unrelated to valuation or basis." *AHG Invs.*, 140 T.C. at 74. The tax court rejected this argument because Ginsburg's "concessions . . . do not prevent application of the gross valuation misstatement penalty to the underpayments of tax as a matter of law." *Id.* at 85. The tax court determined that the forty percent gross valuation misstatement penalty applied to AHG Investments, "subject to any partner-level defenses."

This determination was "conclusive." *See Woods*, 571 U.S. at 41. And the section 6751(b)(1) supervisory approval argument was not a partner-level defense.

The supervisory approval argument was not a partner-level defense because it was not personal to Ginsburg. It would have applied to all of AHG Investments's partners. The forty percent penalty was determined at the partnership level. *See AHG Invs.*, 140 T.C. at 73–74. If a supervisor didn't approve the initial determination of the penalty as section 6751(b)(1) requires, then the Service couldn't have applied the penalty at all—to any of the partners, not just Ginsburg—because the defect in supervisory approval would taint the whole penalty, not just one partner's share. In contrast, Ginsburg's good-faith reliance on professional advice was a partner-level defense because it focused on his own individual motives. The supervisory approval argument has no personal component. Either a supervisor approved the penalty or she didn't, and if she didn't, the penalty is defective as a whole and doesn't apply to any of the partners.

The supervisory approval defense was also not a partner-level defense because it could have been determined at the partnership level. As we explained earlier, "a court in a partnership-level proceeding . . . has jurisdiction to determine not just partnership items, but also 'the applicability of any penalty . . . which relates to an adjustment to a partnership item.'" *Woods*, 571 U.S. at 39 (quoting 26 U.S.C. § 6226(f)). The applicability of any penalty depends on whether it is "personally approved (in writing) by the immediate supervisor of the individual making [the initial penalty] determination." 26 U.S.C. § 6751(b)(1). Ginsburg could have raised the supervisory approval issue at the partnership level

since the approval was required as part of the penalty determination. *See id.*

We're not the first court to say so. In *Mellow Partners v. Commissioner*, 890 F.3d 1070 (D.C. Cir. 2018), the D.C. Circuit explained that, although the partnership "did not raise its [section] 6751(b)(1) challenge at any point during the [t]ax [c]ourt proceedings," "[n]othing precluded [it] from doing so." *Id.* at 1081. "Section 6751," the D.C. Circuit continued, "has been in existence since 1998," *id.*, and the partnership "was free to raise the same, straightforward statutory interpretation argument . . . that the language of [section] 6751(b)(1) requires [the Service] to obtain written approval by a certain point in the process in order to impose penalties," *id.* at 1082. In *Nix v. United States*, 339 F. Supp. 3d 580 (E.D. Tex. 2018), the district court concluded that "[t]he proper place to raise compliance with [section] 6751 was at the partnership-level proceeding." *Id.* at 588. And, in *Rogers v. Commissioner*, Nos. 30586-09, 1052-12, 15682-13, 30482-13, 20910-14, 2019 WL 2304993 (T.C. May 30, 2019), *aff'd,* 9 F.4th 576 (7th Cir. 2021), the tax court reasoned:

> The Commissioner's noncompliance with section 6751(b) is a partnership-level defense. Parties in a partnership-level case may raise noncompliance with section 6751(b) as a defense. However, a partner may not raise section 6751(b) noncompliance as a defense at the partner level for penalties previously determined at the partnership level. Under section 6230, partner-level defenses are "those that are

personal to the partner or are dependent upon the partner's separate return and cannot be determined at the partnership level." The tax treatment of partnership items and the applicability of any penalty, addition to tax, or additional amount that relates to an adjustment to a partnership item is determined at the partnership level.

*Id.* at *8 (citations omitted).[3]

The section 6751(b)(1) supervisory approval issue was not personal to Ginsburg, and he could have raised it at the partnership level. It is not a partner-level defense. Allowing Ginsburg to "[d]efer[] consideration of [the supervisory approval issue] until partner-level proceedings would replicate the precise evil that [the Act] sets out to remedy: duplicative proceedings, potentially leading to inconsistent results, on a question that applies equally to all of the partners." *Woods*, 571 U.S. at 42.

## CONCLUSION

Ginsburg did not properly raise his argument that the government didn't meet its burden to show under section 6751(b)(1) that a supervisor personally approved (in writing) the

---

[3] The Second Circuit's decision *Chai v. Commissioner*, 851 F.3d 190 (2d Cir. 2017), is not to the contrary. As the district court explained, unlike here, the *Chai* taxpayer raised the section 6751(b)(1) supervisory approval issue in a posttrial brief in the tax court. *Id.* at 203. Here, Ginsburg did not raise the supervisory approval issue until his refund lawsuit, after the tax court made the partnership-level determination.

forty percent gross valuation misstatement penalty. He had to raise the issue in the partnership-level proceedings before the tax court. And he had to exhaust it with the Service in his claim for refund. Because he did neither, the district court rightly refused to consider the argument and correctly granted summary judgment for the government on Ginsburg's refund lawsuit.

**AFFIRMED.**