# United States Tax Court

T.C. Memo. 2025-50

HANCOCK COUNTY LAND ACQUISITIONS, LLC,
SOUTHEASTERN ARGIVE INVESTMENTS, LLC,
TAX MATTERS PARTNER,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 12385-20.                    Filed May 20, 2025.

————

*Cenk A. Erkal*, *Victor M. Fox*, *Cassandra S. Bradford*, *Hale E. Sheppard*, *Sean R. Gannon*, and *Kevin M. Johnson*, for petitioner.

*Shannon C. Bambery*, *Olivia R. Blauert*, *Tess deLiefde*, *Rebecca J. Krystosek*, *Ashley M. Van Fleet*, and *Tracie M. Knapp*, for respondent.

## MEMORANDUM OPINION

LAUBER, *Judge*: This case involves a charitable contribution deduction claimed for 2016 by Hancock County Land Acquisitions, LLC (Hancock), for the donation of a conservation easement. The Internal Revenue Service (IRS or respondent) issued a Notice of Final Partnership Administrative Adjustment (FPAA) disallowing this and other deductions and determining penalties. Petitioner timely petitioned this Court for readjustment of partnership items.

Currently before the Court are two Motions for Partial Summary Judgment filed by respondent. In the first Motion respondent contends that the IRS complied with the requirements of section 6751(b)(1) by

[*2] securing timely supervisory approval of the penalties at issue.[1] In the second Motion respondent contends Hancock is not entitled to deductions under section 162 for expenses incurred in connection with the easement transaction. We will grant the first Motion and deny the second.

*Background*

The following facts are derived from the pleadings, the parties' Motion papers, and the Declarations and Exhibits attached thereto. These facts are stated solely for the purpose of deciding respondent's Motions and not as findings of fact in this case. *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994).

Hancock is a Mississippi limited liability company organized in April 2016. It is treated as a TEFRA partnership for Federal income tax purposes.[2] Hancock and its tax matters partner, petitioner Southeastern Argive Investments, LLC, both had their principal places of business in Georgia when the Petition was timely filed. Absent stipulation to the contrary, appeal of this case would lie to the U.S. Court of Appeals for the Eleventh Circuit. *See* § 7482(b)(1)(E).

In June 2016 Hancock acquired 236 acres of land in Hancock County, Mississippi, and shortly thereafter granted a conservation easement over the property. On a timely filed 2016 Form 1065, U.S. Return of Partnership Income, it claimed a charitable contribution deduction of $180,177,000 for this gift. Hancock also reported "other deductions" of $6,128,493, allegedly attributable to expenses incurred in connection with the easement transaction.

The IRS selected Hancock's 2016 return for examination. It assigned the case to Revenue Agent (RA) Pamela Stafford, a member of Team 1021 in the IRS Large Business & International Division. Howard Kanter and Steven T. Holzer, senior in-house appraisers employed by the IRS, prepared an "appraisal review report" that evaluated the appraisal submitted with Hancock's return. As the examination neared

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Before its repeal, the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. No. 97-248, §§ 401–407, 96 Stat. 324, 648–71, governed the tax treatment and audit procedures for many partnerships, including Hancock.

[*3] completion, RA Stafford recommended assertion against Hancock of a 40% penalty for gross valuation misstatement. *See* § 6662(b)(3), (h). In the alternative, she recommended assertion of a 20% penalty for substantial valuation misstatement, reportable transactions understatement, negligence, and/or a substantial understatement of income tax. *See* §§ 6662(b)(1)–(3), (c)–(e), 6662A.[3]

RA Stafford's recommendations to this effect were set forth in two civil penalty approval forms. The first, addressing the charitable contribution deduction, recommended all the penalties listed above. The second, addressing the "other deductions," recommended only a 20% penalty for negligence or a substantial understatement. RA Stafford has submitted a declaration under penalties of perjury averring that she "performed the examination of [Hancock] for its 2016 taxable year and made the initial determination to assert [these] penalties." Copies of both penalty approval forms are included with her Declaration.

RA Stafford's immediate supervisor at the time was Benjamin Brantley, her acting team manager. Respondent has submitted Form 10247, Designation to Act, executed by Catherine Brooks on January 30, 2020. It states that Mr. Brantley was designated to act as Acting Team Manager of Team 1021 from February 2 through May 23, 2020. Ms. Brooks notified the team of this appointment in a February 3, 2020, email, which stated that "Ben Brantley is [now] designated to act as Team Manager for ECPA Team 1021." RA Stafford has averred under penalty of perjury that Mr. Brantley was her "immediate supervisor" at all relevant times.

On April 9, 2020, Mr. Brantley approved assertion of the 20% penalty determined with respect to disallowance of the "other deductions." He indicated his approval by affixing his digital signature to that penalty approval form at 7:07 p.m. that evening. On April 20, 2020, Mr. Brantley approved assertion of the 40% and 20% penalties determined with respect to disallowance of the charitable contribution deduction. He indicated his approval by affixing his digital signature to that penalty approval form at 11:26 a.m. that morning. On this form Mr. Brantley verified that he was the "immediate supervisor" of RA Stafford, that she "made the initial determination of the penalties," and that he

---

[3] Respondent has since conceded the section 6662A penalty. We accordingly need not consider whether the IRS secured timely supervisory approval for it.

[*4] "approve[d] that initial determination." He signed the form as "Acting Team Manager, [Team] 1021."

On July 23, 2020, the IRS issued petitioner an FPAA, including a Form 886–A, Explanation of Items, disallowing in toto the $180,177,000 deduction Hancock had claimed for the conservation easement. The FPAA likewise disallowed the $6,128,493 deduction for "other expenses" on the ground that Hancock had not substantiated that they qualified for deduction under section 162. Finally, the FPAA determined the 40% and 20% penalties described above, as recommended by RA Stafford and approved by Mr. Brantley. The FPAA constituted the first formal communication of these penalties to petitioner.

Petitioner timely petitioned this Court for readjustment of partnership items. On November 1, 2024, respondent filed the first Motion for Partial Summary Judgment, seeking a ruling that the IRS complied with the section 6751(b) supervisory approval requirements. On January 6, 2025, respondent filed the second Motion, seeking a ruling that Hancock is not entitled to at least $3,540,348 of the $6,128,493 in "other deductions" claimed on its 2016 return. Petitioner opposed both Motions.

*Discussion*

I. *Summary Judgment Standard*

The purpose of summary judgment is to expedite litigation and avoid costly, unnecessary, and time-consuming trials. *FPL Grp., Inc. & Subs. v. Commissioner*, 116 T.C. 73, 74 (2001). We may grant partial summary judgment regarding an issue as to which there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. *See* Rule 121(a); *Sundstrand Corp.*, 98 T.C. at 520. In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. *Sundstrand Corp.*, 98 T.C. at 520. However, where the moving party properly makes and supports a motion for summary judgment, "the nonmovant may not rest on the allegations or denials in that party's pleading" but must set forth specific facts, by affidavit or otherwise, showing that there is a genuine dispute for trial. Rule 121(d).

**[\*5]** II.     *Analysis*

A.     *Penalty Approval*

Section 6751(b)(1) provides that "[n]o penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination."  In a TEFRA case such as this, "the Commissioner must secure written supervisory approval for the penalty before issuing an FPAA to the partnership."  *Palmolive Bldg. Invs., LLC v. Commissioner*, 152 T.C. 75, 83 (2019).  If supervisory approval is obtained by that date, our Court has held that the partnership must establish that the approval was untimely, i.e., "that there was a formal communication of the penalty [to the partnership] before the proffered approval [was secured]."  *See Frost v. Commissioner*, 154 T.C. 23, 35 (2020).[4]

Absent stipulation to the contrary this case is appealable to the Eleventh Circuit, and we thus follow its precedent.  *See Golsen v. Commissioner*, 54 T.C. 742, 756–57 (1970), *aff'd*, 445 F.2d 985 (10th Cir. 1971).  The Eleventh Circuit has interpreted the term "assessment" to refer to the "ministerial" process by which the IRS formally records the tax debt.  *Kroner v. Commissioner*, 48 F.4th 1272, 1278 (11th Cir. 2022), *rev'g in part* T.C. Memo. 2020-73.  The IRS thus satisfies section 6751(b) "so long as a supervisor approves an initial determination of a penalty assessment before [the IRS] assesses those penalties."  *See Kroner v. Commissioner*, 48 F.4th at 1276.

Under a literal application of the standard enunciated by the Eleventh Circuit in *Kroner*, supervisory approval could seemingly be secured at any moment before actual assessment of the tax, which has not yet occurred.  But the Eleventh Circuit left open the possibility that supervisory approval in some cases might need to be secured sooner, i.e., before the supervisor "has lost the discretion to disapprove" assertion of the penalty.  *See id.* at 1279 n.1; *cf. Laidlaw's Harley Davidson Sales, Inc. v. Commissioner*, 29 F.4th 1066, 1074 (9th Cir. 2022) (treating supervisory approval as timely if secured before the penalty is assessed or "before the relevant supervisor loses discretion whether to approve the

---

[4] Although the Commissioner does not bear a burden of production with respect to penalties in a partnership-level proceeding, a partnership may raise section 6751(b) as an affirmative defense.  *See Dynamo Holdings Ltd. P'ship v. Commissioner*, 150 T.C. 224, 236–37 (2018); *Sparta Pink Prop., LLC v. Commissioner*, T.C. Memo. 2022-88, 124 T.C.M. (CCH) 121, 123 n.4.

[*6] penalty assessment"), *rev'g and remanding* 154 T.C. 68 (2020); *Chai v. Commissioner*, 851 F.3d 190, 220 (2d Cir. 2017) (concluding that supervisory approval must be obtained at a time when "the supervisor has the discretion to give or withhold it"), *aff'g in part, rev'g in part* T.C. Memo. 2015-42.

The record establishes that RA Stafford, who conducted the Hancock examination, made the "initial determination" to assert the penalties. She did so by preparing separate penalty approval forms, the first for penalties attributable to the disallowance of the charitable contribution deduction and the second for penalties attributable to disallowance of the "other deductions." Respondent has supplied copies of the two penalty approval forms and a declaration from RA Stafford averring that she "performed the examination of [Hancock] . . . and made the initial determination to assert [these] penalties."

The record establishes that Mr. Brantley was RA Stafford's "immediate supervisor" at the relevant times. Respondent has supplied a copy of a properly executed Form 10247 stating that Mr. Brantley was "Acting Team Manager" for Team 1021 from February 2 through May 23, 2020. RA Stafford has averred under penalty of perjury that Mr. Brantley was her immediate supervisor during that period. We conclude that Mr. Brantley was her "immediate supervisor" within the meaning of section 6751(b)(1). *See Sand Inv. Co. v. Commissioner*, 157 T.C. 136, 142 (2021) (holding that the "immediate supervisor" is the person who supervises the agent's substantive work on an examination); *Park Lake II, LLC v. Commissioner*, T.C. Memo. 2025-11, at *2–3, *7–8 (holding that signature of acting team manager on a penalty approval form satisfied the statutory requirements); *Salacoa Stone Quarry, LLC v. Commissioner*, T.C. Memo. 2023-68, at *6 (same).

The record further establishes that Mr. Brantley timely approved the penalties by affixing his electronic signature using Adobe software. On April 9, 2020, he digitally signed the penalty approval form relating to disallowance of the "other deductions," identifying himself as "Team Manager" for Team 1021. On April 20, 2020, he digitally signed the penalty approval form relating to disallowance of the charitable contribution deduction. On that form he confirmed that he was "the immediate supervisor or acting immediate supervisor of [RA Stafford]," that RA Stafford "made the initial determination [of the penalties]," and that he "approve[d] that initial determination."

**[\*7]**   The FPAA was issued on July 23, 2020.  As of April 9 and 20, 2020, the dates on which Mr. Brantley had supplied his respective approvals, the IRS examination remained at a stage where he had discretion to approve or disapprove the penalty recommendations.  *See Kroner v. Commissioner*, 48 F.4th at 1279 n.1.  Therefore, under the reading of *Kroner* most favorable to petitioner, the IRS complied with section 6751(b)(1) in this case because Mr. Brantley timely approved the relevant penalties and did so in writing.[5]

Petitioner struggles in vain to gin up a dispute of material fact.  Petitioner first challenges the status of RA Stafford as the IRS officer who made the "initial determination" to assert the penalties.  She avers in her Declaration:  "As part of my duties as a Revenue Agent, I performed the examination of [Hancock] for its 2016 taxable year and made the initial determination to assert [the] penalties [at issue]."  Petitioner dismisses this averment as "self-serving" and "uncorroborated."

Petitioner concedes that "Revenue Agent Pamela V. Stafford . . . conducted the examination of Hancock's 2016 Form 1065."  Petitioner does not dispute that making recommendations about appropriate penalties is among the normal duties of an examining agent.  Petitioner offers nothing but speculation to support its hypothesis that someone other than RA Stafford discharged that duty here.

The averments in RA Stafford's Declaration, moreover, are corroborated by Mr. Brantley.  On the penalty approval form for the 40% and 20% penalties, he verified that he was the "immediate supervisor" of RA Stafford, that she "made the initial determination of the penalties," and that he "approve[d] that initial determination."  As the Acting

---

[5] Petitioner argues that "the Court does not have to apply *Kroner* under the *Golsen* rule" because *Kroner* was a deficiency case, whereas this is a TEFRA partnership case.  According to petitioner, the Court should therefore apply the standard it adopted earlier in *Belair Woods, LLC v. Commissioner*, 154 T.C. 1, 10 (2020), under which the IRS must secure penalty approval before issuing its first "formal written communication" of the penalties to the taxpayer.  Petitioner's argument is doubly flawed.  Petitioner does not explain why it should matter, in interpreting the text of section 6751(b)(1), that this is a TEFRA case rather than a deficiency case.  In any event the IRS *did comply* with the standard enunciated in *Belair Woods* by obtaining supervisory approval before issuing its first formal communication of the penalties to Hancock in the FPAA.  *See Belair Woods*, 154 T.C. at 10.  Petitioner errs in citing *Ginsberg v. United States*, 17 F.4th 78 (11th Cir. 2021), in support of its argument.  *Ginsberg* simply stands for the proposition that, in a TEFRA case, the proper place to raise compliance with section 6751(b) is in a partnership-level proceeding.  That ruling is wholly consistent with the holding in *Kroner* about *when* penalty approval must be obtained.

**[\*8]** Team Manager, Mr. Brantley was obviously in a position to know which member of his Team had recommended the penalties he was approving.

Petitioner's speculation that someone other than RA Stafford may have made the "initial determination" to assert penalties against Hancock—notwithstanding her conceded status as the examining agent for the Hancock audit—is not enough to establish a genuine dispute of material fact. *See* Rule 121(d). Respondent has supplied documentary evidence confirming that RA Stafford was the examining agent and that Mr. Brantley approved her penalty recommendation in his capacity as her Team Manager. Respondent has submitted a Declaration under penalties of perjury averring that these are genuine documents included within the IRS administrative file.[6]

We have repeatedly held that a manager's signature on a penalty approval form, without more, is sufficient to satisfy the statutory requirements. *See Sparta Pink Prop.*, 124 T.C.M. (CCH) at 124 (citing *Belair Woods*, 154 T.C. at 17); *see also, e.g., Thompson v. Commissioner*, 155 T.C. 87, 93–94 (2020); *Goddard v. Commissioner*, T.C. Memo. 2022-96, 124 T.C.M. (CCH) 187, 197; *Excelsior Aggregates, LLC v. Commissioner*, T.C. Memo. 2021-125, 122 T.C.M. (CCH) 292, 294. And we have regularly decided section 6751(b)(1) questions on summary judgment on the basis of IRS records and declarations from relevant IRS officers. *See, e.g., Sand Inv.*, 157 T.C. at 142; *Long Branch Land, LLC v. Commissioner*, T.C. Memo. 2022-2, 123 T.C.M. (CCH) 1008, 1009. The record establishes that these requirements were met here.

Petitioner asks that we defer decision on this question pending further discovery "to verify the accuracy of the Stafford Declaration and the facts contained therein, [including] information pertaining to Agent Stafford's purported recommendation of her initial determination to assert the Penalties to GM Brantley." We are mindful that "summary judgment should not be granted until the party opposing the motion has had an adequate opportunity for discovery." *Snook v. Tr. Co. of Ga. Bank of Savannah, N.A.*, 859 F.2d 865, 870 (11th Cir. 1988). But discovery must be relevant to "the subject matter involved in the pending

---

[6] Petitioner urges that there is a factual dispute as to whether RA Stafford recommended the penalties to her supervisor "*before* the Penalty Approval Forms were signed." But Mr. Brantley verified that RA Stafford "made the initial determination of the penalties" that appeared on the penalty approval form he was signing. Necessarily, therefore, she made those recommendations "before the Penalty Approval Forms were signed."

[*9] case." Rule 70(b)(1); *see Hickman v. Taylor*, 329 U.S. 495, 507–08 (1947); *Caney v. Commissioner*, T.C. Memo. 2010-90, 99 T.C.M. (CCH) 1366, 1368.

The discovery petitioner seeks is irrelevant to the resolution of the question presented by respondent's Motion. *See* Rule 121(e); *Caney*, 99 T.C.M. (CCH) at 1368 (considering whether "further discovery would likely yield any fact essential to [the nonmoving party's] opposition to the [summary judgment] motion"). Section 6751(b) is captioned "Approval of assessment." As we have said before: "The written supervisory approval requirement . . . requires just that: written supervisory approval." *Pickens Decorative Stone, LLC v. Commissioner*, T.C. Memo. 2022-22, 123 T.C.M. (CCH) 1127, 1130 (quoting *Raifman v. Commissioner*, T.C. Memo. 2018-101, 116 T.C.M. (CCH) 13, 28). The record includes documents demonstrating the required written supervisory approval. By propounding discovery requesting communications among the IRS exam team, petitioner seeks improperly to look behind the statements and signatures appearing on the forms. *See Sparta Pink Prop.*, 124 T.C.M. (CCH) at 124; *Patel v. Commissioner*, T.C. Memo. 2020-133, 120 T.C.M. (CCH) 211, 214; *Raifman*, 116 T.C.M. (CCH) at 28.

Taking a different tack, petitioner next argues that RA Stafford and Mr. Brantley lacked "discretion to make independent decisions regarding the Penalties." That is assertedly so because other employees of the IRS—unnamed higher level officials or the in-house appraisers assigned to value the easement—had supposedly dictated that penalties be asserted.

First, petitioner contends that it was not RA Stafford but "higher-level officials within the IRS" who made the "initial determination of [the penalty] assessment." *See* § 6751(b)(1). That is supposedly so because in 2017 the IRS had issued a public notice advising that participants in syndicated easement transactions risked certain penalties. *See* I.R.S. Notice 2017-10, 2017-4 I.R.B. 544, 546. And the IRS subsequently advised that, in examining easement transactions based on inflated valuations, it would "continue to disallow the claimed tax benefits, asserting civil penalties to the fullest extent." I.R.S. News Release IR-2020-130 (June 25, 2020).

We are not persuaded. Neither of these pronouncements determined any penalties against any taxpayer within the meaning of section 6751(b). As we have held, the "initial determination of [a penalty] assessment" is a formal action by the Examination Division directed to a

**[\*10]** particular taxpayer. *See Frost*, 154 T.C. at 32 (holding that an "initial determination" is made by a member of the IRS examination team); *Belair Woods*, 154 T.C. at 15 (same). Our inquiry thus turns on the timeliness of penalty approval vis-a-vis "the taxpayer against whom the penalties are being asserted." *Excelsior Aggregates*, 122 T.C.M. (CCH) at 295.

We have previously ruled that IRS announcements to the public at large, including Notice 2017-10 and related news releases, cannot constitute "the initial determination of [a penalty] assessment" because such announcements are not directed to a specific taxpayer whose return is under IRS examination. *See Pickens Decorative Stone*, 123 T.C.M. (CCH) at 1129–30 (citing *Frost*, 154 T.C. at 32). The "initial determination of [a penalty] assessment" occurs when the IRS makes "an unequivocal decision to assert penalties." *See Belair Woods*, 154 T.C. at 15. The IRS could not have made an unequivocal decision to assert penalties against Hancock before reviewing its return to determine whether an "understatement" existed. *See Thompson*, 155 T.C. at 92. Because the IRS did not conclude its examination of Hancock's return until July 2020, an unequivocal determination to assert penalties against Hancock could not possibly have been made in 2017.

Alternatively, at least with respect to the valuation misstatement penalties, petitioner asserts that Howard Kanter and Steven T. Holzer made the "initial determination of the penalty assessment." *See* § 6751(b)(1). Messrs. Kanter and Holzer, senior in-house appraisers employed by the IRS, prepared an "appraisal review report" that evaluated the appraisal submitted with Hancock's return. Their report, which RA Stafford received in August 2019, concluded that the fair market value of the donated easement was $5,169,400 rather than $180,177,000.

"Once [an easement's] value is determined," petitioner says, "the application of section 6662(h) is simple arithmetic." If Messrs. Kanter and Holzer made the "initial determination of [the penalty] assessment," *see* § 6751(b)(1), their supervisor, not RA Stafford's supervisor, would supposedly have been the proper person to consider penalty approval. Petitioner contends that uncertainty on this point creates a genuine dispute of material fact precluding summary judgment.

Again we disagree. Nowhere in their report do Messrs. Kanter and Holzer recommend the assertion of penalties against Hancock, for valuation misstatement or otherwise. Their limited role was to review Hancock's appraisal and provide their evaluation of it to RA Stafford for

**[\*11]** her use in conducting the examination. RA Stafford was free to disagree with any aspect of the report, including the appraisers' methodology, their comparable transactions, and their bottom-line conclusions.

In-house IRS appraisers do not have the authority to "determine" penalties; they simply offer an opinion as to value. During an IRS examination it is the duty of the revenue agent to determine penalties, taking into account (among other things) the value of the property contributed and possible defenses the taxpayer may have. The word "determination" has "an established meaning in the tax context and denotes a communication with a high degree of concreteness and formality." *Belair Woods*, 154 T.C. at 15. An "initial determination" signifies a "consequential moment" of IRS action. *Ibid.* (quoting *Chai v. Commissioner*, 851 F.2d at 221).

A preliminary analysis of property value offered to an RA by an appraiser is simply not a "determination" within the meaning of section 6751(b)(1). RA Stafford as the examining agent was responsible for making the initial penalty determinations, and Mr. Brantley as her immediate supervisor was responsible for approving them. The input supplied by the in-house appraisers did not deprive RA Stafford or Mr. Brantley of the discretion to make independent decisions regarding the penalties.

B.     *Section 162 Deductions*

On January 6, 2025, respondent filed a Motion for Partial Summary Judgment contending that at least $3,540,348 of the reported section 162 deductions should be disallowed. Respondent contends that these expenses were incurred by other entities and thus were not properly deductible by Hancock as ordinary and necessary expenses of its trade or business. Alternatively, respondent contends that $2.5 million of those expenses were required to be capitalized.

Most of these expenses appear related in some way to the easement transaction or the cost of marketing it to investors. The expenses apparently included management fees, consulting expenses, appraisal fees, and reimbursements. Respondent contends these expenses "were incurred by and belonged to" Webb Creek Management Group, LLC (Webb Creek), or another entity involved in the easement transaction. Alternatively, respondent contends that the management fee reflected nondeductible syndication costs. *See* § 709(a) (providing that "amounts

**[\*12]** paid or incurred to organize a partnership" or to promote sale of partnership interests must be capitalized).

Section 162(a) allows "as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." Taxpayers have the burden of proof to substantiate any deductions claimed. *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 83–84 (1992). It is well settled that a taxpayer's payment of another person's expenses generally does not give rise to a deduction under section 162. *Interstate Transit Lines v. Commissioner*, 319 U.S. 590, 593–94 (1943); *Am. Lithofold Corp. v. Commissioner*, 55 T.C. 904, 921 (1971).

Petitioner contends that Hancock in fact paid some of the expenses itself, that all the expenses were incurred for its benefit, that the expenses discharged by Webb Creek were paid on Hancock's behalf under an agency arrangement, and that a letter of intent upon which respondent relies was not an enforceable contract. Substantiation questions by their nature are intensely factual. Resolving doubts in petitioner's favor as we must do at this stage of the proceedings, we conclude that genuine disputes of material fact exist regarding the allowability of these deductions and that summary adjudication is inappropriate. We believe that we will be in a better position to decide these questions after a full exposition of the facts at trial.

To reflect the foregoing,

*An order will be issued granting respondent's Motion for Partial Summary Judgment at docket entry No. 68 and denying respondent's Motion for Partial Summary Judgment at docket entry No. 78.*